Country Side Roofing and Sheet Metal, Inc.; Marjorie I. Lewis, as executrix of the estate of Donald L. Lewis; and Marjorie I. Lewis, individually (collectively referred to as "Country Side"), appeal from a summary judgment entered in favor of the *Page 989 
defendants, Mutual Benefit Life Insurance Company ("Mutual Benefit") and Carter Smith. Country Side filed an action seeking $50,000 on a life insurance policy issued by Mutual Benefit to Donald L. Lewis. The action was filed two days afterMutual Benefit had issued, and one day after it had mailed, itscheck in the amount of $52,023.55 in payment of the claim onthe policy. Country Side sought a recovery against the defendants on six theories: 1) an alleged fraud on the part of both defendants in representing that the Mutual Benefit policy "was a lot better" than a $50,000 policy on Lewis's life that had been issued by another company; 2) an alleged fraud on the part of both defendants in suppressing material facts, "including all relevant facts as to the disadvantages of replacing the then existing $50,000 life insurance policy"; 3) a contract claim by the beneficiary, Country Side, for insurance proceeds; 4) an alleged bad faith refusal to pay the claim; 5) alleged negligence on the part of both defendants in causing or allowing "the [earlier] policy of insurance with Midland National on the life of Donald L. Lewis to lapse"; and 6) alleged wantonness arising out of the same facts as the negligence claim.[1]
 FACTS
In November 1987, Donald L. Lewis applied for a life insurance policy with Mutual Benefit. The application listed Donald L. Lewis as the proposed insured and Country Side as the owner of the policy. Lewis was president of Country Side. The application listed the initial premium as $2,604, payable in monthly installments of $217.
At the time Lewis filed the application, he also executed a document entitled "Important Notice Regarding Replacement of Life Insurance." That document is attached to this opinion as an Appendix. That document contains the following language:
 "Our agent is recommending to you that you purchase a life insurance policy from us. In connection with this purchase, you have indicated either as a result of his recommendation or at your own initiative, that you may terminate or change your existing policy issued by another insurance company or that you may obtain a loan from that company against your policy to pay premiums on the proposed policy. Any of these actions is a replacement of life insurance. This notice must be given to you. Please read it carefully.
". . . .
 "You should also recognize that a policy which has been in existence for a period of time may have certain advantages to you over a new policy. If the policy coverages are basically similar, the premiums for a new policy may be higher because rates increase as your age increases. Under your existing policy, the period of time during which the issuing company could contest the policy because of a material misstatement or omission on your application, or deny coverage for death caused by suicide, may have expired or may expire earlier than it will under the proposed policy. Your existing policy may have options which are not available under the policy being proposed to you or may not come into effect under the proposed policy until a later time during your life."
(Emphasis added.)
On January 18, 1988, Mutual Benefit issued an "Adjustable Life Policy" to Lewis. The policy was on the life of Lewis, with Country Side being named as the beneficiary.
On December 30, 1989, Lewis died as a result of a "gunshot wound to the head."[2] Gayle Acton, an employee of Country Side, notified Smith within three or four days of Lewis's death, and on February 1, 1990, Country Side executed an "Individual *Page 990 
Death Claim Form." Mutual Benefit received the death claim form on February 21, 1990. On March 16, 1990, Country Side provided Mutual Benefit with an authorization to obtain information. On April 27, 1990, Country Side contacted Mutual Benefit concerning any action that Country Side needed to perform in order to be able to obtain the insurance proceeds. On May 2, 1990, Mutual Benefit sent Country Side a letter in which it stated: "Since the insured died within the contestable period of the policy, we are conducting our customary investigation. Until this investigation is completed we will not be able to determine the extent of our liability. . . ." Mutual Benefit also asked for a signed statement from Mrs. Marjorie I. Lewis, Lewis's wife, regarding the deceased's health history. Mutual Benefit again requested a signed statement from Ms. Lewis regarding the deceased's health history on June 1, 1990. On July 11, 1990, Country Side wrote Mutual Benefit and demanded to know why the insurance proceeds had not been paid.
On July 13, 1990, Country Side sued Mutual Benefit and Smith. On the day before, July 12, 1990, Mutual Benefit had informed Smith that it had completed its investigation of Country Side's claim, had approved payment of the proceeds, and was sending a check for the proceeds to Smith to give to Country Side. On July 19, 1990, Smith delivered a check for the insurance proceeds to Country Side.
On August 6, 1990, Country Side moved to dismiss the contract count of its complaint. Mutual Benefit filed a motion to dismiss the remaining claims, and, in the alternative, a motion for summary judgment, on August 10, 1990. Smith filed a motion to dismiss or, in the alternative, a motion for more definite statement, on August 17, 1990. The trial court granted Mutual Benefit's motion for summary judgment and Smith's motion to dismiss on October 31, 1990. Although the trial court specifically granted Smith's motion to dismiss, it is apparent from the record that the trial court treated the motion as one for summary judgment. The order states: "After consideration of the matters presented, this Court concludes that there is no genuine issue of material fact and that the defendants are entitled to a judgment as a matter of law on all claims." We shall likewise treat the motion to dismiss as a motion for summary judgment.
A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P. All reasonable doubts concerning the existence of a genuine issue of fact must be resolved against the moving party. Roper v. AssociatesFinancial Services, 533 So.2d 206 (Ala. 1988), citing Fountainv. Phillips, 404 So.2d 614 (Ala. 1981); Autrey v. Blue Cross Blue Shield of Alabama, 481 So.2d 345 (Ala. 1985). We now address Country Side's claims that the summary judgment was inappropriate.
 FRAUD CLAIMS
Country Side asserted two fraud claims against Smith and Mutual Benefit in its original complaint. These counts alleged that Smith and Mutual Benefit committed fraud by 1) stating that the life insurance policy offered by Mutual Benefit was "better" than the policy that Lewis had with Midland National Insurance Company and 2) failing to inform Lewis of the disadvantages of replacing his then existing life insurance policy with a policy with Mutual Benefit. Country Side filed an additional fraud count against Smith and Mutual Benefit in an amended complaint. This count alleged that on the first payment Mutual Benefit and Smith had fraudulently failed to pay all of the proceeds due under the insurance policy; the count alleged that Mutual Benefit had represented that all the proceeds had been paid, but later sent a check for an additional sum representing unearned premiums.[3] *Page 991 
The first fraud issue presented concerns whether Smith and Mutual Benefit's "better" statement concerning the life insurance policy is an actionable misrepresentation.
Ala. Code 1975, § 6-5-101, provides:
 "Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."
In order to come under the purview of this statute, four elements must be present: (1) There must be a false representation; (2) the false representation must concern a material existing fact; (3) the plaintiff must rely upon the false representation; and (4) the plaintiff must be damaged as a proximate result. Harmon v. Motors Ins. Corp.,493 So.2d 1370, 1373 (Ala. 1986).
It is undisputed that any representation regarding the policy was made to the insured, Lewis, and that Lewis filed no action with regard to that claim; it is also undisputed that the representee, Lewis, and the plaintiff, Country Side, are not one and the same. The law considers "it fundamental that the representee who has relied on the defendant's alleged misstatements and the plaintiff who was injured must be one and the same." Hutchins v. State Farm Mut. Auto. Ins. Co.,436 So.2d 819 (Ala. 1983). In Georgia Casualty Surety Co. v.White, 582 So.2d 487 (Ala. 1991), the executrix of the will of Mr. White sought to maintain an action based on representations concerning an "offer to settle" made to Mr. White prior to his death. The executrix alleged that that was a "bad faith" offer. In that case the insurer argued, and we held, that the "bad faith offer to settle" claim was a "cause of action," rather than an "action," and, therefore, that it did not survive the death of Mr. White. See Gillian v. Federated Guaranty Ins. Co.,447 So.2d 668 (Ala. 1984), cited in Georgia Casualty. We conclude, therefore, in this case that the first fraud claim, i.e., "cause of action," did not survive Lewis's death.
There is another reason, however, that will support the summary judgment on the first fraud count.
Country Side alleges that Smith told Lewis that Mutual Benefit's policy was "better" than his existing policy when, in reality, the policies provided the same benefits. However, Smith and Mutual Benefit contend that Smith's statement that the insurance policy was "better" referred to the fact that the same benefits would be provided by Mutual Benefit that were provided by Midland National, but for half the cost. In support of this contention, Mutual Benefit and Smith refer to Lewis's application for insurance, which provides for an annual premium of $2,604, or $217 per month. This is exactly half the premium amount charged by Midland National. In addition, Gayle Acton, the secretary/treasurer of Country Side, submitted an affidavit to the trial court that stated:
 "Carter Smith thereupon came to the company office, and I heard him state to Donald L. Lewis that he could sell him a policy with Mutual Benefit Life which was better than what Donald L. Lewis had and that he could get him the same policy and the same benefits [at] one half the premium which was [charged] by Midland National."
(Emphasis added.)
In Jarrard v. Nationwide Mutual Ins. Co., 495 So.2d 584
(Ala. 1986), this Court held that an insurance agent's statement that his policy would provide an insured with better coverage could constitute an actionable misrepresentation, but that if the representation was not false, then, of course, it would not be actionable. Here, the plaintiffs' own evidence indicates that Smith's statement that the policy offered by Mutual Benefit was "better" than the policy offered by Midland National was a reference to the premium amounts due under each policy. Furthermore, Lewis executed a document styled "Important Notice Regarding Replacement of Life Insurance," which speaks for itself. *Page 992 
Based on the foregoing, we cannot say that the trial court erred in entering the summary judgment on the first fraud count.
In its second fraud count, Country Side contends that Mutual Benefit and Smith fraudulently failed to disclose to Lewis the disadvantages of replacing Lewis's existing policy with a policy issued by Mutual Benefit. The primary disadvantage of replacing the policy was the fact that the period in which the policy could be contested would begin to run anew, therefore losing the one-year advantage that Lewis had with Midland National.
Smith and Mutual Benefit argue that they informed Lewis of the fact that the contestability period of the policy would begin anew. In support of this contention, Mutual Benefit and Smith offered into evidence the document styled "Important Notice Regarding Replacement of Life Insurance." This "notice" provides, in part:
 "You should also recognize that a policy which has been in existence for a period of time may have certain advantages to you over a new policy. . . . Under your existing policy, the period of time during which the issuing company could contest the policy because of a material misstatement or omission on your application, or deny coverage for death caused by suicide, may have expired or may expire earlier than it will under the proposed policy."
This notice was signed by Lewis on November 24, 1987. See Appendix.
The notice that Lewis signed, which indicated that he had read the notice, clearly stated that the applicant for insurance might be disadvantaged by obtaining a new insurance policy and specifically discussed the fact that the contestability period might be affected. We have examined the record and we hold that the trial court did not err in entering the summary judgment on this fraud count, because there is no evidence to show that Mutual Benefit suppressed any facts it was under a duty to disclose. In fact, the evidence is to the contrary. It shows that Lewis was notified that there could be disadvantages in switching policies. See Appendix. The record contains no evidence indicating that Lewis was incapable, mentally or physically, of examining the notice or inquiring as to its terms before signing it. Under these circumstances, we hold that the summary judgment was proper as to the second fraud claim.
As its third fraud claim, Country Side contends that the defendants fraudulently failed to pay all of the proceeds of the policy. The record shows that on August 31, 1990, less than six weeks after Country Side's attorney received the $52,023.55 check from Smith, Mutual Benefit issued a second check in the amount of $217.11, as a refund of the January 18, 1990, premium on the policy. This check was transmitted to Country Side's attorney on September 17, 1990; the attorney refused to accept the check, returned it, and amended the complaint to allege that the failure to include this refund of premium in the check originally sent was a misrepresentation that authorized the maintenance of a third fraud claim.
Country Side fails to show that Mutual Benefit and Smith fraudulently failed to provide it with the unearned premium payment. Therefore, the trial court did not err in granting Mutual Benefit and Smith's motions for summary judgment on this count.
 NEGLIGENCE CLAIM
Country Side contends that the defendants negligently failed to warn Lewis of the disadvantages of replacing his then existing insurance policy with a policy issued by Mutual Benefit. This negligence claim is the same as one of the fraud claims asserted by Country Side. This claim is without merit, for the same reasons already stated with regard to the fraud claim. Lewis was clearly warned of the dangers of replacing his existing policy with a policy issued by Mutual Benefit. Therefore, the trial court did not err in entering the summary judgment in favor of the defendants on this issue. *Page 993 
 BAD FAITH CLAIM
Finally, Country Side contends that the defendants acted in bad faith in refusing to pay the proceeds due under the policy before July 1990.
The elements of a bad faith claim were summarized inNational Security Fire Cas. Co. v. Bowen, 417 So.2d 179, 183
(Ala. 1982), as follows:
 "An insurer is liable for its refusal to pay a direct claim when there is no lawful basis for the refusal coupled with actual knowledge of that fact. Chavers v. National Security Fire Ins. Co., 405 So.2d 1 (Ala. 1981). No lawful basis 'means that the insurer lacks a legitimate or arguable reason for failing to pay the claim.' Gulf Atlantic Life Ins. Co. v. Barnes, 405 So.2d 916 (1981). When a claim is 'fairly debatable,' the insurer is entitled to debate it, whether the debate concerns a matter of fact or law. Ibid.
 "Under those authorities the plaintiff in a 'bad faith refusal' case has the burden of proving:
 "(a) an insurance contract between the parties and a breach thereof by the defendant;
 "(b) an intentional refusal to pay the insured's claim;
 "(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
 "(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
 "(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
 "In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith
nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim."
(Emphasis in original.)
After Lewis's death, Mutual Benefit investigated to determine whether the gunshot wound was the result of a homicide or was self-inflicted. Mutual Benefit was also conducting a general investigation of the insurance policy because Lewis's death occurred in the contestable period. After Mutual Benefit completed its investigation, it sent Country Side the benefits owed under the policy. Applying the test set out by this Court for the maintenance of a bad-faith-failure-to-pay claim, we hold that the trial court properly entered the summary judgment on the bad faith claim. The record supports the defendants' argument that Country Side failed to overcome the defendants' prima facie showing that there was no actionable bad faith failure to pay the policy benefits or to repay the one month's unearned premium.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] Country Side has waived the issue of wantonness on appeal.
[2] The policy contained a suicide exclusion. There was evidence that the death may have been self-inflicted. In fact, on February 1, 1990, a death claim form was filed with Mutual Benefit by Country Side. The claim form was executed by Gayle Acton as corporate secretary. The cause of death on this claim form was listed as "suicide or homicide."
[3] On September 14, 1990, trial counsel for Mutual Benefit sent a letter to Country Side's attorney enclosing a check from Mutual Benefit, payable to Country Side, in the amount of $217.11. This check represented a refund of the January 18, 1990, premium paid on the policy insuring Donald Lewis, which had been automatically paid by bank draft before Mutual Benefit received notice of the death of Donald Lewis, which occurred in late December 1989. *Page 994 
 APPENDIX This form should be used when existing coverage with another company is being replaced with new Mutual Benefit coverage.
 IMPORTANT NOTICE REGARDING REPLACEMENT OF LIFE INSURANCE
Our agent is recommending to you that you purchase a life insurance policy from us. In connection with this purchase, you have indicated either as a result of his recommendation or at your own initiative, that you may terminate or change your existing policy issued by another insurance company or that you may obtain a loan from that company against your policy to pay premiums on the proposed policy. Any of these actions is a replacement of life insurance. This notice must be given to you. Please read it carefully.
Whether it is to your advance to replace existing insurance coverage, only you can decide. It is in your best interest, however, to have adequate information before a decision to replace your present coverage becomes final so that you may understand the essential features of the proposed policy and of your existing insurance coverage.
To this end, we are required to give you a Policy Summary including complete information on the proposed policy no later than when that policy is delivered to you. In addition, we are required to notify the insurance company that issued your existing policy. That company may then furnish your additional information concerning your existing policy. You may want to contact that company or its agent for further information and advice or discuss your purchase with other advisors. The information you receive will be of value to you reaching a final decision.
If either the proposed policy or the existing insurance you intend to replace is a participating policy, you should be aware that dividends may materially reduce the cost of insurance and are an important factor to consider. Dividends, however, are not guaranteed.
You should also recognize that a policy which has been in existence for a period of time may have certain advantages to your over a new policy. If the policy coverages are basically similar, the premiums for a new policy may be higher because rates increase as your age increases. Under your existing policy, the period of time during which the issuing company could contest the policy because of a material misstatement or omission on your application, or deny coverage for death caused by suicide, may have expired or may expire earlier than it will under the proposed policy. Your existing policy may have options which are not available under the policy being proposed to you or may not come into effect under the proposed policy until a later time during your life. Also, your proposed policy's cash values and dividends, if any, may grow slower initially because the company will incur the cost issuing your new policy. On the other hand, the proposed policy may offer advantages which are more important to you.
If you are considering borrowing against your existing policy to pay the premiums on the proposed policy, you should understand that in the event of your death, the amount of any unpaid loan, including unpaid interest, will be deducted from the benefits of your existing policy thereby reducing your total insurance coverage.
After we have received your application and notified the other insurance company you will have twenty days from the date of the proposed policy is delivered to you to cancel that policy issued on your application and receive back all payments you made to us.
CAUTION
If, after studying the information made available to you, you decide to replace the existing life insurance with our life insurance policy, you are urged not to take action to terminate or alter your existing life insurance coverage until after you have been issued the new policy, examined it and have found it to be acceptable to you. If you should terminate or otherwise materially alter your existing coverage and fail to qualify for the life insurance for which you have applied, you may find yourself unable to purchase other life insurance or able to purchase it only at substantially higher rates.
I have received and read a copy of this Replacement Notice.
(Signed) __________ Date ________ Applicant *Page 995