**William BENTON, Sr., Plaintiff,**

v.

**The PAUL REVERE LIFE INSURANCE COMPANY, Defendant.**

Civ. A. No. 93–D–594–E.

United States District Court,
M.D. Alabama,
Eastern Division.

June 16, 1994.

James R. McKoon, Jr., Phenix City, AL, for plaintiff.

Bert S. Nettled, Kate Baldwin Gamble, Birmingham, AL, for defendant.

## MEMORANDUM OPINION AND ORDER

De MENT, District Judge.

This matter is now before the court on the defendant's motion for summary judgment. After the submission of numerous briefs and proposed orders by both parties, the court finds that the defendant's motion is due to be denied.

## JURISDICTION

This court has subject matter jurisdiction under 28 U.S.C.A. § 1332. Personal jurisdiction and venue are uncontested.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this stage of the case is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

## FACTS

In October 1986, plaintiff William Benton, Sr. met with David Newsome, an insurance agent for the Paul Revere Life Insurance Company ("Paul Revere"), to discuss disability insurance, which covers losses of income incurred when an insured becomes disabled. When Benton inquired to what degree that he would have to become disabled to receive benefits, Newsome allegedly responded by

saying, "As long as it interfered with the material responsibilities of your profession as a lawyer, you'd be disabled. You would be eligible under this policy." (Benton dep. at 22.)[1] Benton also inquired as to how long he would be eligible for benefits once he became disabled. Newsome allegedly told Benton five years, but that he "could get it to [him] for life if [he] want[ed] to pay extra." (*Id.*)[2] Benton purchased the disability policy and the rider, which would provide disability benefits after the policy coverage was exhausted for the rest of Benton's life. On January 1, 1987, Paul Revere issued Benton a policy and a rider. After issuance, Benton instructed Newsome to keep the policy on file, along with another policy taken out by Benton's son. Benton did not review the policy until approximately the end of 1990 or the early months of 1991.

During the fall of 1990 and the winter of 1991, Benton began to experience significant hearing loss and requested that Newsome allow him to see his policy so he could determine whether his condition warranted the payment of benefits under the terms of the policy. After examining the policy, Benton realized for the first time that the definition of total disability was different in the policy and the rider. Under another rider, which is not directly in issue, total disability was defined as

> Total disability means that because of injury or sickness: (a) you are unable to perform the important duties of your regular occupation; and (b) you are under the regular and personal care of a physician.

(Def.'s Exh. E.)[3] To receive benefits under the rider, an insured had to meet the following criteria:

> If before age 65, injury or sickness causes you to totally and irrecoverable lose: (1) your power of speech; (2) your hearing in both ears; or (3) your sight in both eyes; or (4) use of both hands; or (5) use of both feet; or (6) use of one hand and one foot; we will consider you to be totally disabled

---

1. In his deposition, Benton testified to the following:

> And I remember that in discussing it with him I said, "Well, let me ask you something, Mr. Newsome." I said, "Would I be put to the position of having gotten to where I couldn't even sell pencils on the corner before I qualify for disability?"
> And he said, "No, sir." He said, "As long as it interfered with the material responsibilities of your profession as a lawyer, you'd be disabled. And you would be eligible under this policy," I believe he said "for—for your disability." And I said, "For how long?" And he said, "Five years." And he said, "Now, I could—I could get it to you for life if you want to pay extra." And I said, "Well, okay."
> (Benton dep. at 21–22.)

2. Benton further testified in his deposition:

> Q. Bill, was that your assumption or did David Newsome actually tell you there was no difference?
> A. At the time that we were talking, at that time, he said, "As long as it interferes with the material responsibilities of your profession, then you would be disabled under this policy. And you would draw your disability."
> And I said, "David, does that mean that if I could still sell pencils on the corner, that I wouldn't be disabled?" He said, now, that had nothing to do with it. "You can do anything else. But as far as the practice of law, you would be disabled as far as the practice of law."
> He said, "Now, I can sell you some—" I asked him, I said, "For how long would I be considered under the policy compensated for?" He said, "Five years." He said, "Now, I can get you some additional time for additional money." And I said, "Okay. What have you got?" He said, "Well, I can get it to you for life, for this—this premium." And he told me what it would be. And I said, "Well, let's do that then."
> Q. Was that all that David Newsome said about the rider?
> A. Yes, sir. Yes, sir.
> (Benton dep. at 22–23.)

3. The definition of total disability contained in the policy was as follows:

> Total disability means that because of injury or sickness: (a) you are unable to perform the important duties of your regular occupation; and (b) you are not engaged in any other gainful occupation; and (c) you are under the regular and personal care of a physician.

(Def.'s Exh. E at 7.) Although throughout the defendant's briefs, this total disability clause was urged upon the court as the clause in question, the fact is the controlling total disability clause is actually contained in the above-cited rider, the origin of which is unexplained. However, the above-cited rider modifies the definition of total disability in the policy by deleting the require-

whether or not you are able to work or require treatment by a physician.

(Def.'s Exh. E.)

After examining the policy and the rider, Benton discussed the situation with Newsome, who reportedly did not realize that there was any differences in coverage.[4] At Benton's request, on February 12, 1991, Newsome contacted Paul Revere about Benton's claim for benefits and the differences in coverage between the policy and rider. On June 12, 1991, Benton, in a letter to Paul Revere, discussed his application for benefits and the differences in benefits under the policy and the rider. On March 17, 1992, Paul Revere responded by denying Benton benefits under the rider because his hearing loss was not total and irrecoverable. On February 8, 1993, Paul Revere wrote Benton's attorney and denied benefits to Benton under the lifetime rider.

It is undisputed that Benton is not totally deaf, but that he has suffered hearing loss significant enough to materially interfere with his regular occupation, the practice of law. Benton contends that before purchasing the policy, agent Newsome represented the contents of the rider to him in such a way as to presuppose that coverage under the rider and the policy were the same, the only difference being that the rider provided for continued coverage after the expiration of the five years of benefits provided for by the policy. On April 5, 1993, Benton filed a complaint for declaratory judgment and for misrepresentation in the Circuit Court of Russell County, Alabama, which was removed to this court.

In his complaint, Benton alleges that Paul Revere, "through his agent Newsome, committed fraud against him by making representations [about the terms of the policy and rider] recklessly without knowledge of their truthfulness, negligently, or innocently by mistake, but with the intention that [Benton]

should rely on the representations." (Pl.'s Proposed Order at 5.)

## DISCUSSION

■■■ To establish a prima facie case of fraud, the plaintiff must "show that defendant made a false statement of an existing material fact which the defendant either knew was false or which defendant made without regard to its truth or falsity and upon which plaintiff *justifiably* relied to [his] detriment." *Henig Furs, Inc. v. J.C. Penney Co.*, 811 F.Supp. 1546, 1549 (M.D.Ala.1993) (De Ment, J.) (citing *First Ala. Bank v. First State Ins.*, 899 F.2d 1045, 1056 (11th Cir. 1990) (discussing Alabama law[5])); *see Patel v. Hanna*, 525 So.2d 1359, 1360 (Ala.1988) (quoting *Army Aviation Ctr. Fed. Credit Union v. Poston*, 460 So.2d 139, 142–43 (Ala. 1984)).

■■■ First, statements comprising the alleged misrepresentations "must be viewed in their entirety to adequately resolve the question of whether a misrepresentation has occurred." *Utah Foam Products, Inc. v. Polytec, Inc.*, 584 So.2d 1345, 1351 (Ala.1991). The alleged misrepresentations, in the present case, occurred when Newsome was attempting to sell Benton a disability insurance policy. According to Benton's deposition, the misrepresentation was as follows: "And I said, 'For how long?' And he said, 'Five years.' And he said, 'Now, I could—I could get it to you for life if you want to pay extra.' And I said, 'Well, okay.'" (Benton dep. at 22.) Later in his deposition, Benton confirmed his conversation with Newsome by testifying:

> I asked him, I said, "For how long would I be considered under the policy compensated for?" He said, "Five years." He said, "Now, I can get you some additional time for additional money." And I said, "Okay. What have you got?" He said, "Well, I

ment that the insured not engage in any other gainful employment. (Def.'s Exh. E.)

**4.** According to Benton's deposition, after Benton experienced the hearing loss, he met with Newsome to discuss the coverage provided under the policy and the rider. Benton testified in his deposition that, at that time, Newsome told him

that "I did not know that there was a difference in the rider qualifications and the other." (Benton dep. at 29.)

**5.** Alabama allows a plaintiff to sue for innocent misrepresentation—any false statement made by defendant upon which plaintiff justifiably relied. *Ala.Code* § 6–5–101 (1993).

can get it to you for life, for this—this premium." And he told me what it would be. And I said, "Well, let's do that then." (Benton dep. at 23.) In the context of the conversation where Newsome and Benton had just discussed the level of disability required to receive benefits,[6] a person would reasonably have thought that Newsome was discussing an extension of time for which Benton could receive the same benefits and under the same circumstances as provided for by the policy. In other words, by not distinguishing the level of disability necessary to receive benefits under the rider after just discussing the level of disability necessary under the policy, Newsome misrepresented the coverage provided under the rider. Common sense would dictate that Benton thought Newsome was discussing the same type of coverage when Newsome began to discuss an extension of the benefits without noting the differences in the total disability provisions. The court finds that Benton's testimony is sufficient to create a genuine issue of material fact as to whether Newsome innocently or recklessly misrepresented the coverage under the disability policy's rider.

■ The defendant argues that Newsome's comments were not sufficiently definite to constitute an innocent misrepresentation. *Kaye v. Pawnee Constr. Co.,* 680 F.2d 1360, 1367 (11th Cir.1982) ("Innocent misrepresentations must be reasonably certain and definite. Representations of wholly different wording, in which a similar impression is conveyed by implication, do no suffice.") Although Newsome did not specifically represent to Benton that the level of disability required under the policy and under the rider were the same, the court finds that Newsome's alleged comments were certain and definite enough for a reasonable person to infer that Newsome was discussing an extension of the same coverage for a period longer than five years. The defendant's argument that statements, which "in effect" are misleading, should not be considered sufficiently definite to constitute an affirmative false misrepresentation is not well taken. To find that a misrepresentation of the coverage under an insurance policy had to be a verba-

6. *See, supra,* footnote 4 and accompanying text.

tim contradiction of the policy's terms would render the common law action of innocent misrepresentation toothless, which is something this court is loath to do. A representation is sufficiently definite if from the context of the conversation, the comment is clear enough to be false and misleading to the hearer. The court finds that Newsome's comments, in the context which they were made, were sufficiently definite to constitute an alleged misrepresentation.

The remaining issue for the court to decide is whether there is a genuine issue of material fact in regard to whether Benton justifiably relied on Newsome's statements. The Supreme Court of Alabama has abandoned the standard of reasonable reliance when determining if an actionable fraud has been committed. *Harris v. M & S Toyota, Inc.,* 575 So.2d 74 (Ala.1991).

> [T]he standard by which to test the "reliance" element in both consumer and commercial fraud transactions [is as follows]:
>
> > A plaintiff, given the particular facts of his knowledge, understanding, and present ability to fully understand the nature of the subject transaction and its ramifications, has not justifiably relied on the defendant's representation if that representation is "one so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth."

*Johnson v. State Farm Ins. Co.,* 587 So.2d 974, 979 (Ala.1991) (quoting *Southern States Ford v. Proctor,* 541 So.2d 1081, 1091–1092 (Ala.1989) (Hornsby, C.J., concurring specially)). The supreme court has further held:

> The present standard of "justifiable reliance" requires the party making a representation *to refrain from dishonest, untrue or recklessly inaccurate or untrue statements.* The party receiving the representation is required to be alert to statements that are patently false. Whereas the old standard of reasonable reliance placed a burden on the party to whom a representation was made—the burden of discerning the truthfulness of a statement—*the new standard of justifiable reliance places a burden on the party making the state-*

*ment—the burden of knowing the truthfulness of a statement.*

*Harris,* 575 So.2d at 77–78 (emphasis added).

 In this situation where the court is faced with representations from an insurance agent to a perspective customer about scope of coverage under a policy, the court finds that Newsome's representations were not patently false so as to alert Benton of their untruthfulness. Most, if not all, potential insureds rely on the special knowledge of insurance agents about the terms of different policies when purchasing insurance. This is particularly true in modern times where the typical insurance contract is unintelligible to the average consumer. Under current law, Paul Revere bears the burden of proving sufficient facts from which a jury could find that Newsome knew that his statements concerning the coverage under the rider were truthful at the time that he made them. In Benton's deposition, Benton testified that when he met with Newsome to discuss the terms of the policy after he experienced the hearing loss, Newsome told him that he was unaware that there was a difference in qualifications between the policy and rider. (Benton dep. at 29.) In today's confusing insurance market populated by numerous companies, each providing a myriad of policy choices, the court believes that it is the duty of the agent to understand the differences between two products which the agent is attempting to sell to a customer.

In *Hicks v. Globe Life and Accident Insurance Company,* 584 So.2d 458 (Ala.1991), the Supreme Court of Alabama held that where an insurance agent misrepresented to a customer that one health insurance policy would provide the same coverage as the customer's current policy but for a lower price, the customer justifiably relied on the agent's misrepresentations. The court so held even though plaintiff Hicks had a copy of the insurance policy and admittedly, had never read it. According to the court, the misrepresentation occurred not upon receipt of the policy, but at the time of the application when the agent misrepresented the scope of coverage provided by the replacement policy. The court finds that the facts are very similar to those in this case and that the same reasoning controls.

 Defendant Paul Revere is correct in stating that the terms of the policy and the rider were unambiguous, but the court finds that truth irrelevant.[7] The fraud at issue did not result from a false statement in the policy, but from a misrepresentation by Newsome at the time of the application. Similar to the facts in *Hicks,* Benton admits that he relied on Newsome's representations about the rider and that he never read his policy, allowing Newsome to keep it on file until he began inquiring about filing a claim. The court finds that based on the court's holding in *Hicks,* the plaintiff has submitted sufficient evidence to create a genuine issue of material fact regarding whether Benton justifiably relied on Newsome's representations.

Upon finding that several genuine issues of material fact are present in this case, the defendant's motion for summary judgment is due to be denied.

### CONCLUSION

In sum, it is CONSIDERED and ORDERED that the defendant's motion for summary judgment be and the same is hereby DENIED.

---

7. Paul Revere cites *Wakefield v. State Farm Mut. Auto. Ins. Co.,* 572 So.2d 1220 (Ala.1990), for the proposition that clear, unambiguous provisions of an insurance contract should be enforced as written. The court agrees that the proposition is a correct statement of the law, but finds that it is not applicable in the present case. The issue in this case is whether the defendant's agent committed a fraud by allegedly misrepresenting the terms of a policy at the time the insured applied for coverage. The instant case does not involve an interpretation of the insurance policy.