**In re Verner M. BOOTH, Debtor.**

**Kendall MEGGS and Angela Meggs, Plaintiffs,**

v.

**Verner M. BOOTH, Defendant.**

Bankruptcy No. 93–72594.
Adv. No. 94–70313.

United States Bankruptcy Court,
N.D. Alabama,
Western Division.

Dec. 1, 1994.

Claude M. Burns, Jr., Tuscaloosa, AL, for debtor.

Harry M. Renfroe, Jr., Tuscaloosa, AL, for plaintiffs.

Robert A. Morgan, Chapter 7 Trustee, Tuscaloosa, AL.

### MEMORANDUM OF LAW

GEORGE S. WRIGHT, Chief Judge.

This case is before the court on an adversary proceeding complaint filed by Kendall and Angela Meggs objecting on fraud charges to the debtor, Verner M. Booth's, discharge of his obligation to them. After reviewing the evidence heard at trial and the briefs of the parties in the context of applicable law, the court finds that the Meggs' $13,176.95 claim, based on a state court judgment against Booth, is **NONDISCHARGE-ABLE** in bankruptcy on under 11 U.S.C. § 523(a)(2)(A).

### FINDINGS OF FACT

The following summation of the facts is based on the totality of testamentary and documentary evidence.

In 1987, plaintiff Kendall Meggs' employer, ARC, Inc., sought to change medical insurance policies because of an increase in premiums. It asked Verner M. Booth, an insurance agent, to obtain rate quotes on other policies. Booth did so and ARC, Inc., ultimately selected a plan underwritten by Pan–American, Inc., and administered by National Insurance Services, Inc. (NIS).

The coverage under the new policy became effective on January 1, 1988. By its terms, it provided coverage for maternity expenses only if conception occurred after the new policy became effective. Booth, however, told Kendall Meggs that the new policy was a "take-over" policy, which, in effect, waived exclusions for pre-existing conditions and provided the same benefits for those conditions as the former policy.

That was not true. The policy actually issued by Pan–American was not a "take-over" policy. Mrs. Meggs discovered she was pregnant in December of 1987 and her

physician confirmed pregnancy on January 11, 1988.

NIS and Pan–American denied the Meggs' claim for maternity benefits on the basis that the pregnancy was a pre-existing condition not covered by the new policy. The Meggs first filed suit in the Jefferson County Circuit Court against Verner M. Booth; Pan–American Life Insurance Company, and National Insurance Services, Inc. (CV90–0816, filed January 23, 1990, attachment to AP Doc. 1.)

Pan–American and National Insurance Services, Inc. removed the state court fraud suit to the United States District Court for the Northern District of Alabama at Birmingham. There, District Judge Sam C. Pointer, Jr. granted Pan–American's and National Insurance Service's motions for summary judgment and remanded the fraud suit against Booth back to state court once again.

Booth was considered an independent broker and not an agent of Pan–American or NIS. So the United States District Court determined it did not have subject matter jurisdiction over the claims against Booth as an individual.

The original state court suit (Attachment to AP Doc. 1) is a one-count complaint based upon fraud in which the Meggs alleged Booth committed fraud by misrepresentation of the insurance under *Ala.Code* § 27–12–6 (1986).[1] That code section is included in Alabama law governing fair trade practices in the insurance industry.

The Meggs contended Booth misrepresented the facts of the new policy by telling them it would not cause them a loss of coverage or benefits. By doing so, the suit alleged, the Meggs were induced to convert their prior health plan to the policy that became effective January 1, 1988.

That original complaint alleged that Booth's representations were:

(A) were false and were made with knowledge of their falsity, or (B) were false and were recklessly misrepresented without knowledge of the true facts, or (C) were false and made by mistake but with the intention that plaintiffs should rely on them, or (D) were made to induce or attempt to tend to induce plaintiffs to exchange, change, cancel, or convert from their prior health benefit plan to the plan which became effective on January 1, 1988, in violation of *Ala.Code* § 27–12–6 (1986).

The state court suit came to trial and Tuscaloosa County Circuit Judge Robert B. Harwood, Jr., signed a consent judgment entered between the Meggs and Booth on October 25, 1993. A $12,701.08 consent judgment was entered in favor of the Meggs against "Booth, individually, and d/b/a Vern Booth Agency and Vern Booth Agency."

The consent decree specified the judgment could be satisfied by "one or more of the defendants" paying the Meggs $200.00 a month until the full judgment, plus post-judgment interest, was satisfied.

On December 15, 1993, Verner M. Booth, aka Vern Booth, d/b/a Booth Agency, filed a Chapter bankruptcy 7 petition (BK 93–72594) in this court. The Meggs' state court judgment was not recorded until March 14, 1994. (Exhibit B to AP Doc. 1.)

Additionally, on March 14, 1994, the Meggs filed this adversary proceeding (AP 94–70313) objecting to the debtor's discharge under Section 523(a)(2)(A), Section 523(a)(4) and Section 523(a)(6). The case came on to be heard on June 21, 1994 and after briefs submitted by the parties, the issue of dischargeability was taken under submission.

The Meggs filed Proof of Claim 9 in Booth's bankruptcy September 12, 1994. They claimed a total $13,176.95, including the $12,701.08 principal balance of the judgment, plus post judgment interest and court costs.

The Meggs' adversary proceeding stated that the state court case against Booth involved claims that the debtor, as their insurance agent, "committed fraud, misrepresentation, deceit, and suppression, which result-

---

1. *Ala.Code* § 27–12–6 provides the following: "Twisting"

No person shall make or issue, or cause to be made or issued, any written or oral statement misrepresenting or making misleading incomplete comparisons as to the terms, conditions, benefits contained in any policy for the purpose of inducing, or attempting or tending to induce, the policyholder to lapse, forfeit, surrender, retain, exchange or convert any insurance policy.

ed in their loss of money, health insurance coverage and mental anguish." They contended these allegations made the consent decree liquidating the damages nondischargeable in bankruptcy under 11 U.S.C. §§ 523(a)(2)(A), (a)(4) and (a)(6).[2]

The Meggs claim that:

(1) the state court consent judgment on a one-count fraud complaint is collateral estoppel on the issue of dischargeability under the three bankruptcy sections; and

(2) on the merits alone, based on evidence presented before the bankruptcy court, this court should hold the debt to be nondischargeable.

## I.

*Since the fraud issue was not actually litigated nor stipulated to in state court, the consent decree is not determinative of the dischargeability question.*

A. **State law determines whether a bankruptcy court must give a state court judgment issue preclusion effect under the doctrine of collateral estoppel.**

■ The Eleventh Circuit Court of Appeals, in *St. Laurent, II v. Ambrose (In re St. Laurent)*, 991 F.2d 672 (11th Cir.1993), discusses the effect of collateral estoppel in dischargeability actions (construing Florida law):

> Collateral estoppel, or issue preclusion, bars relitigation of an issue previously decided in judicial or administrative proceedings if the party against whom the prior decision is asserted had a "full and fair opportunity" to litigate that issue in an earlier case. *Allen v. McCurry,* 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). Collateral estoppel principles apply to dischargeability proceedings. *Grogan v. Garner,* 498 U.S. 279, 285 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755

(1991). If the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect. *In re Touchstone,* 149 B.R. 721, 725 (Bankr.S.D.Fla.1993).

*St. Laurent,* 991 F.2d at 675.

*See also Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). In Meggs v. Booth, the prior judgment was rendered in state court, so Alabama law defines collateral estoppel.

■ Alabama's case law shows the elements necessary for collateral estoppel are the following:

(1) the second action must involve an issue identical to the one litigated in the earlier action;

(2) the issue must have been *actually litigated* in the earlier action;

(3) the resolution of the issue must have been necessary to the judgment in the earlier action; and

(4) the same parties must be involved in the two actions.

*See Benetton S.p.A. v. Benedot, Inc.,* 642 So.2d 394 (Ala.1994) (Element 1 was not present: Not identical issue—Prior: preliminary injunction. Present: Fraud); *Dairyland Insurance Co. v. Jackson,* 566 So.2d 723 (Ala.1990) (Element 4 was not present: Not same parties—Prior: Passenger against Driver J of other car in accident—Present: Driver J against driver's uninsured motorist insurance carrier); *Dixie National Life Insurance Co. v. McWhorter (Matter of McWhorter),* 887 F.2d 1564 (11th Cir.1989) (Element 1 not present: Not identical issue—Prior: 18 policyholders recovered against insurance company on finding that company ratified or approved salesman's

---

**2.** 11 U.S.C. §§ 523(a)(2)(A), (a)(4) and (a)(6) provide the following:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false misrepresentation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; ...
(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;
(6) for willful and malicious injury by the debtor to another entity or to the property of another entity; ...

misrepresentation. Present: other policy holders sued.); *North Alabama Anesthesiology Group, P.C. v. Zickler* (*In re North Alabama Anesthesiology Group, P.C.*), 154 B.R. 752 (N.D.Ala.1993) (all four elements satisfied); *Pierce v. Rummell*, 535 So.2d 594 (Ala.1988) (Element 1—identical issues, and Element 3—resolution of the issue was necessary to prior judgment not present); and *Lott v. Toomey*, 477 So.2d 316 (Ala.1985) (Element 4 not satisfied: not the same parties).

**B. The state court consent decree cannot have a collateral estoppel effect on the fraud issue in this case because it was not actually litigated nor did the parties enter stipulations making it clear the judgment was a final adjudication of the fraud issue.**

Element two that is in question on this state court judgment's collateral estoppel effect on the Meggs dischargeability action. That element is that "the issue must have been *actually litigated* in the earlier action."

The question is whether a *consent decree* can satisfy that element.

■ The law in Alabama, supported by the Eleventh Circuit and textwriters, is that neither a *consent* judgment nor a *default* judgment can satisfy the "actually litigated" element. *AAA Equipment & Rental, Inc. v. Bailey*, 384 So.2d 107 (Ala.1980) (consent judgment); *Gibbs v. Air Canada*, 810 F.2d 1529, 1535 (11th Cir.1987) (default judgment); and *Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.*, 575 F.2d 530 (5th Cir.1978) (consent decree) (in *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981), the new Eleventh Circuit adopted all Fifth Circuit decisions entered prior to the end of business September 30, 1981 as binding precedent).

■ However, if the parties intend that a *consent* judgment operates as a final adjudication and make that binding by *stipulation* of the ultimate facts, then it satisfies the "actually litigated" element. *See* 1B James W. Moore Et al., Moore's Federal Practice, P. 0.444[4] p. 816 (2d ed. 1985). *See also Halpern v. First Georgia Bank* (*In re Halpern*), 810 F.2d 1061 (11th Cir.1987) (detailed factual finding sufficient); *Barber v. International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, Lodge No. 57*, 778 F.2d 750, 757 (11th Cir.1985) (intent manifested so estopped); and *Smith v. Beeson* (*In re Smith*), 128 B.R. 488 (S.D.Fla.1991) (parties intended a final adjudication).

In the Meggs v. Booth case, there is a state court fraud complaint which cites *Ala. Code* § 27–12–6 as its statutory base. And there is a judgment styled a consent decree and executed by a state court judge. However, that judgment contains no detailing of the ultimate facts constituting fraud and no manifestation of intent that the judgment is a final adjudication of the issue.

Therefore, the prior state court judgment cannot be determinative under the doctrine of collateral estoppel (issue preclusion) of the Meggs bankruptcy dischargeability claim.

**II.**

*However, the evidence reveals Booth's representations to the Meggs' created a nondischargeable obligation under 11 U.S.C. § 523(a)(2)(A).*

**A. Fraud under Section 523(a)(2)(A) does not require that the defendant intended to mislead the plaintiffs—only that he/she did so recklessly.**

The bankruptcy statute states that a debtor must be denied discharge under Section 523(a)(2)(A) of obligations:

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

■ The terms "false pretenses, a false representation or actual fraud" contemplate that the misrepresentation must be intentional or with reckless indifference to the truth. The term "reckless" has been interpreted to be the equivalent of *intentional*. *See Morimura, Arai & Co. v. Taback*, 279 U.S. 24, 49 S.Ct. 212, 73 L.Ed. 586 (1929) (under Section

14 of the old Bankruptcy Act "reckless indifference to actual facts" is equivalent to intentional misrepresentation).

The leading case on "reckless" misrepresentation is *Birmingham Trust National Bank v. Case*, 755 F.2d 1474 (11th Cir.1985) where the debtor, as president of a corporation, represented that the corporation owned certain equipment which was actually owned by a third party. The Eleventh Circuit held that representation with *reckless* disregard for the truth or falsity of a statement constituted a "false representation" under § 523(a)(2)(A) of the Bankruptcy Code.

This *reckless* disregard for the truth or falsity of a representation has been approved in other cases. *Coman v. Phillips* (*In re Phillips* ), 804 F.2d 930 (6th Cir.1986); *Samuel v. Baitcher* (*In re Baitcher* ), 781 F.2d 1529 (11th Cir.1986); *Gardner v. American Century Mortgage Investors*, 577 F.2d 928 (5th Cir.1978); *Fidelity & Deposit Co. v. Browder*, 291 F.2d 34 (5th Cir.1961) (Eleventh Circuit adopted decisions of Fifth Circuit entered prior to end of business September 30, 1981 as binding precedent. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981)). Other courts have held that even *innocent* misrepresentation can be nondischargeable. See *In re Kanak*, 85 B.R. 483 (Bankr.N.D.Ill.1988); and *In re Gibson*, 149 B.R. 562 (Bankr.D.Minn.1993).

**B.  Booth was reckless in assuring the Meggs that the new policy would cover pre-existing conditions, when he could easily have determined the true facts of the matter.**

■    In the instant case, Booth was in the business of writing health insurance policies and being a broker or agent in obtaining quotes for health insurance policies. The Meggs asked specifically for a "take-over" policy which would have covered pre-existing conditions. Booth, in response, specifically represented to the couple that the policy was a "take-over" policy and that pre-existing conditions (such as pregnancies) were covered.

In truth, the policy had an exclusion for maternity benefits where conception occurred prior to the effective date of the policy. Therefore, the court finds that the debtor either intentionally or, at least, recklessly, misrepresented the coverage. The conditions of the new coverage were readily determinable by Booth as an insurance agent. He could and should have verified those terms before giving the assurances to the Meggs.

Such a finding eliminates a need to determine whether or not the representations were made *innocently*. In a similar case, *Commonwealth Land Title Insurance Co. v. Homer (In re Homer)*, 168 B.R. 790 (Bankr. N.D.Ga.1994), an attorney-debtor with more than 20 years' experience made written representations on loan closing documents that there was no lien on certain property. Judge James E. Massey held that the debtor *recklessly* disregarded the truth in his representation:

> Moreover, Homer's professed lack of actual knowledge of the contents of the loan application do (sic) not provide him with a shield from a fraud claim if he intended to mislead First Union *or acted recklessly* in failing to read the application. . . .

> To choose to remain ignorant of one's representations in a document upon which another is likely to rely is to choose to deceive, if the document contains materially false representations. *Homer acted so recklessly in failing to read the loan application that his conduct is the equivalent of an intention to defraud First Union.* (emphasis added)

*Homer,* 168 B.R. at 800–01.

**C.  The intent element is met as are all the other elements for misrepresentation of an existing fact under Alabama law applied to define Section 523(a)(2)(A).**

■    The elements of fraud by misrepresentation of an existing material fact are defined by Alabama common law as follows:

> (1) a false representation; (2) of an existing material fact; (3) that is justifiably relied upon; and (4) damage resulting as a proximate cause. *McCullough v. McAnalley,* 590 So.2d 229 (Ala.1991); *Country Side Roofing & Sheet Metal, Inc. v. Mutu-*

*al Benefit Life Ins. Co.,* 587 So.2d 987 (Ala.1991).

*Pinyan v. Community Bank,* 644 So.2d 919, 922 (Ala.1994).

Statutory misrepresentation of a fact in Alabama is comprised of these elements under *Ala.Code* § 6–5–101:

"Misrepresentation of a material fact made wilfully to deceive, or *recklessly without knowledge,* and acted on by the opposite party, constitute legal fraud." (emphasis added)

*Jordan v. Eufaula Flea Market,* 643 So.2d 585, 587 (Ala.1994) (direct quotation of statute).

Clearly, Kendall Meggs relied upon Booth's representations that the new coverage was a "take-over" policy. For he dropped the policy under which he and his wife were fully covered for both pre-existing and future medical conditions based on those representations.

Because Booth was an insurance agent, the court considers the Meggs' reliance on his statements justifiable.

In a similar case, *Benton v. Paul Revere Life Insurance Co.,* 858 F.Supp. 1112 (M.D.Ala.1994). District Judge DeMent denied summary judgment and held that a life insurance agent misrepresented the coverage of a disability insurance rider.

.... In today's confusing insurance market populated by numerous companies, each providing a myriad of policy choices, the court believes that it is the duty of the agent to understand the differences between two products which the agent is attempting to sell to a customer.

In *Hicks v. Globe Life and Accident Insurance Company,* 584 So.2d 458 (Ala.1991), the Supreme Court of Alabama held that where an insurance agent misrepresented to a customer that one health insurance policy would provide the same coverage as the customer's current policy but for a lower price, the customer justifiably relied on the agent's misrepresentations. The court so held even though plaintiff Hicks had a copy of the insurance policy and admittedly, had never read it. According to the court, the misrepresentation oc-

curred not upon receipt of the policy, but at the time of the application when the agent misrepresented the scope of coverage provided by the replacement policy. The court finds that the facts are very similar to those in this case and that the same reasoning controls.

*Benton,* 858 F.Supp. at 1117.

In Meggs v. Booth, the new policy did not cover pre-existing conditions as Booth had assured the Meggs it would. So the Meggs were harmed when the insurance company refused to cover a pregnancy begun before its effective date.

Booth made a reckless misrepresentation which the Meggs justifiably relied on in making a choice that damaged them in a specific way.

Therefore, it is clear that the elements are present for a finding of fraud by misrepresentation under both Alabama law and of fraud under 11 U.S.C. § 523(a)(2)(A) which renders Booth's judgment debt to the Meggs nondischargeable.

## CONCLUSION

This court cannot give the Meggs' state court consent decree collateral estoppel effect on this dischargeability complaint because all the elements for collateral estoppel under state law are not satisfied by the October 25, 1993 consent decree.

Nevertheless, this court's independent examination of the facts shows that Booth is guilty of intentional or reckless misrepresentation on which the Meggs justifiably relied, and which reliance caused them damages. Therefore, Booth's prepetition judgment debt to the Meggs is NONDISCHARGEABLE in bankruptcy under 11 U.S.C. § 523(a)(2)(A).

(Even though the Meggs pleaded under Sections 523(a)(4) and § 523(a)(6) as well, the court need not reach a determination on those dischargeability grounds, since the Section 523(a)(2)(A) finding grants the remedy they seek.)

A separate order will be entered which is consistent with these findings pursuant to Fed.R.Bank.P. 7052.

**DONE AND ORDERED.**

## ORDER HOLDING DEBT TO BE NONDISCHARGEABLE

This matter came before the court on an adversary proceeding filed by Kendall and Angela Meggs objecting to the debtor, Verner M. Booth's, discharge of his obligation to them. After reviewing the evidence heard at trial and the briefs of the parties in the context of applicable law, the court finds that the Meggs' $13,176.95 claim, based on a state court judgment against Booth, is **NONDISCHARGEABLE** in bankruptcy under 11 U.S.C. § 523(a)(2)(A). Therefore, it is hereby

**ORDERED, DECREED AND ADJUDGED:**

1. The court cannot give an October 25, 1994 state court consent decree collateral estoppel effect in this dischargeability action because all the elements required for issue preclusion under state law are not satisfied by the decree.

2. Nevertheless, this court's independent examination of the facts shows that Booth is guilty of intentional or reckless misrepresentation on which the Meggs justifiably relied, and which reliance caused them damages.

3. Therefore, Booth's prepetition judgment debt owed the Meggs is NONDISCHARGEABLE in bankruptcy under 11 U.S.C. § 523(a)(2)(A).

4. The Meggs' $13,176.95 claim (Proof of Claim 9), including court costs and post-judgment interest, is allowed as a nondischargeable obligation against the debtor, Verner M. Booth.

**DONE AND ORDERED.**