**In re L. Carl HOLMES and Carmen Holmes, Debtors.**

**CRL OF MARYLAND, INC., Plaintiff,**

**v.**

**L. Carl HOLMES, Defendant.**

**Bankruptcy No. 88–5–0974–JS. Adv. No. A88–0187–JS.**

United States Bankruptcy Court, D. Maryland.

Aug. 30, 1990.

Gerard King Stevens, Fowley, Beckley & Stevens, Baltimore, Md., for plaintiff.

Joel I. Sher, Shapiro & Olander, Baltimore, Md., for defendant.

## MEMORANDUM OPINION DISMISSING COMPLAINT WITH PREJUDICE

JAMES F. SCHNEIDER, Bankruptcy Judge.

At the conclusion of a hearing held on September 25, 1989 upon the instant complaint to determine dischargeability of debt, this Court granted the debtor's motion to dismiss. The plaintiff filed a post-trial memorandum in opposition to the granting of the motion. Notwithstanding the arguments of the plaintiff contained in the memorandum, the instant complaint will be dismissed with prejudice.

## FINDINGS OF FACT

1. On March 6, 1987, Baltimore Economic Development Corporation [BEDCO] entered into a contract with Damon Construction Company, Inc. for the construction of South Harbor Business Center.

2. On March 12, 1987, Damon Construction Company, Inc., as general contractor, entered into a subcontract with the plaintiff, CRL of Maryland, Inc., as subcontractor on the project. The award of the contract to Damon by BEDCO was based upon a joint venture undertaken by CRL of Maryland, Inc. and Damon Construction Company, Inc. pursuant to a memorandum agreement dated January 14, 1987.

3. At all times, L. Carl Holmes was the president and sole stockholder of Damon Construction Company, Inc.

4. Construction of the project occurred between October, 1987 and March, 1988. Damon Construction Company, Inc. periodically submitted applications for payment to BEDCO as owner of the project.

5. Damon Construction Company, Inc. received $26,692 on behalf of CRL of Maryland, Inc. which it did not remit to CRL of Maryland, Inc.

6. L. Carl Holmes acknowledged receipt of the funds belonging to CRL of Maryland, Inc. and acknowledged that he converted those funds for the use and benefit of Damon Construction Company, Inc.

7. On July 1, 1987, the Maryland Construction Trust Statute ("Trust Relation-

ships in the Construction Industry") contained in Section 9–201 *et seq.* of the Real Property Article of the Annotated Code of Maryland became effective. The statute provides in pertinent part:

Subtitle 2. Trust Relationships in the Construction Industry.

§ 9–201. Moneys to be held in trust; commingling.

(a) Moneys to be held in trust.—Any moneys paid under a contract by an owner to a contractor, or by the owner or contractor to a subcontractor for work done or materials furnished, or both, for or about a building by any subcontractor, shall be held in trust by the contractor or subcontractor, as trustee, for those subcontractors who did work or furnished materials, or both, for or about the building, for purposes of paying those subcontractors.

(b) Commingling.—(1) Nothing contained in this subtitle shall be construed as requiring moneys held in trust by a contractor or subcontractor under subsection (a) of this section to be placed in a separate account.

(2) If a contractor or subcontractor commingles moneys held in trust under this section with other moneys, the mere commingling of the moneys does not constitute a violation of this subtitle. (1987, ch. 345; 1988, ch. 6, § 1.)

§ 9–202. Liability for fraudulent retention or use of moneys held in trust under § 9–201 of this subtitle.

Any officer, director, or employee of any contractor or subcontractor, who, with intent to defraud, retains or uses the moneys held in trust under § 9–201 of this subtitle, or any part thereof, for any purpose other than to pay those subcontractors for whom the moneys are held in trust, shall be personally liable to any person damaged by the action. (1987, ch. 345.)

§ 9–203. Misuse of funds prima facie evidence of intent to defraud.

The use by a contractor or subcontractor or any officer, director, or employee of a contractor or subcontractor of any moneys held in trust under § 9–201 of this subtitle, for any other purpose than to pay those subcontractors who did work or furnished materials, or both, for or about the building, shall be prima facie evidence of intent to defraud in a civil action. (1987, ch. 345.)

§ 9–204. Applicability of subtitle; definitions.

(a) In general.—This subtitle applies to contracts subject to Title 13, Subtitle 5 of the State Finance and Procurement Article, known as the "Little Miller Act", as well as property subject to § 9–102 of this title.

(b) Exceptions contracts.—This subtitle does not apply to:

(1) A contract for the construction and sale of a single family residential dwelling; or

(2) A home improvement contract by a contractor licensed under Article 56 of the Code.

(c) Definitions.—In this subtitle, "owner", "contractor", and "subcontractor" have the same meanings as in § 9–101 of this title. (1987, ch. 345.)

Md. Real Prop.Code Ann. §§ 9–201 *et seq.* (1988 Repl.Vol.).

Section 9–101 referred to above provides:

§ 9–101. Definitions.

(a) In general.—In this subtitle the following words have the meanings indicated.

(b) Building.—"Building" includes any unit of a nonresidential building that is leased or separately sold as a unit.

(c) Contract.—"Contract" means an agreement of any kind or nature, express or implied, for doing work or furnishing material, or both, for or about a building as may give rise to a lien under this subtitle.

(d) Contractor.—"Contractor" means a person who has a contract with an owner.

(e) Land.—"Land" means the land to which a lien extends under this subtitle or the land within the boundaries established by proceedings in accordance with the Maryland Rules. "Land" includes the improvements to the land.

(f) Owner.—"Owner" means the owner of the land except that, when the contractor executes the contract with a tenant for life or for years, "owner" means the tenant.

(g) Subcontractor.—"Subcontractor" means a person who has a contract with anyone except the owner or his agent. (1976, ch. 349, § 3; 1983, ch. 23.)

*Id.,* § 9–201.

8. L. Carl Holmes filed a voluntary Chapter 7 bankruptcy petition [Case No. 88–5–0974–S] in this Court on April 4, 1988.

9. On the same day, Damon Construction Company, Inc. filed a Chapter 11 bankruptcy petition in this Court [Case No. 88–5–0975–S].

10. On July 15, 1988, CRL of Maryland, Inc. filed the instant complaint to determine dischargeability of a debt against L. Carl Holmes, alleging that his conversion of funds due and owing to the plaintiff was a breach of fiduciary duty as a violation of the Maryland Construction Trust Statute and that the debt in the amount of $26,692.52 is nondischargeable pursuant to Section 523(a)(4).

11. Trial was held on the instant complaint on September 25, 1989, at which time the testimony of Stephen Johansen, the plaintiff's general manager, established the existence of a debt owed to the plaintiff by Damon Construction Company in the amount of $26,692.52 as alleged in the complaint.

12. At the close of the plaintiff's case, the Court granted the debtor's motion to dismiss, but indicated that the plaintiff would be afforded the opportunity of submitting a post-trial memorandum in opposition to the motion. The plaintiff's memorandum was filed on November 22, 1989. Counsel for the debtor declined to submit a memorandum.

13. While a decision was pending in this case, the Honorable E. Stephen Derby issued an opinion in a factually similar case, *In re Lawrence W. Marino, Jr.,* 115 B.R. 863 (Bankr.D.Md.1990). That case concerned four complaints filed against a Chapter 7 debtor to declare debts nondischargeable pursuant to Bankruptcy Code Section 523(a)(4). The debtor was the employee, officer, director and sole stockholder of a construction company known as "L.W. Marino, Inc." Two of the plaintiffs were owners of residences which the company had failed to complete as general contractor and they brought suit in the bankruptcy court against the individual debtor for his breach of the Maryland Custom Home Protection Act (which is not at issue in the instant case). The other two plaintiffs were subcontractors whom L.W. Marino, Inc. had failed to pay after having received monies for that purpose from the owners. They filed their complaints charging a violation of the Maryland Construction Trust Statute, (the same statute with which the instant opinion *is* concerned). The question of the implications of the state construction trust statutes upon a discharge in bankruptcy was presented to the Court in the context of the debtor's motion to dismiss the four complaints for failure to state a claim upon which relief could be granted. Many of the same issues involved in the instant case were considered by Judge Derby, including (1) whether the statute created an express trust; (2) whether the statute whose effective date was July 1, 1987 could be applied to impose a trust as to parties to a contract executed before that date; and (3) whether the statute could be used to deny a discharge in bankruptcy to an individual officer or employee of a corporate contractor which allegedly violated the trust statute.

*In re Marino* was a case of first impression in this district. In the course of the opinion, Judge Derby held that the Maryland Construction Trust Statute, Md. Real Prop.Code Ann. §§ 9–201 *et seq.* (1988 Repl.Vol.) created an express trust against contractors in favor of subcontractors; that the statute applied to payments made to a contractor by an owner after July 1, 1987, despite the fact that the date of execution of the contract occurred before the effective date; but that the statute could not be employed as a vehicle to deny a discharge in bankruptcy to an individual officer of a corporate contractor in the absence of evidence of an intent to defraud.

Because the statute required an intent to defraud in order to impose personal liability upon an individual acting on behalf of a corporate contractor, Judge Derby concluded that the statute created a trust *ex maleficio* and not the kind of technical trust which must exist in advance and be independent of the wrongful act in order to support a finding of nondischargeability for breach of fiduciary duty under Section 523(a)(4). *Marino* at 868.

14. The fact that this Court agrees with Judge Derby's last conclusion of law requires the dismissal of the instant complaint. Counsel for the plaintiff has conceded that there is no proof of fraud present in this case, and that Section 523(a)(4) in conjunction with the Maryland Construction Trust Statute is the only possible basis for denial of the debtor's discharge for breach of fiduciary duty. Accordingly, the complaint will be dismissed.

CONCLUSIONS OF LAW

1. Section 523(a)(4) of the Bankruptcy Code provides:

> § 523. Exceptions to discharge.
>
> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> .    .    .    .    .
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]

11 U.S.C. § 523(a)(4) (1988).

2. In order for a debt to be nondischargeable under Section 523(a)(4) arising from a breach of fiduciary duty, the debtor must have been acting as a trustee of an express or technical trust. The commentary on this point in *Collier* supports the view that a trust created in fact and not one implied by law is the necessary basis for an action under Section 523(a)(4) for breach of fiduciary duties:

> The qualification that the debtor be acting in a fiduciary capacity has consistently, since its appearance in the Act of 1841, been limited in its application to what may be described as *technical* or *express trusts*, and not to trusts ex maleficio that may be imposed because of the very act of wrongdoing out of which the contested debt arose. There is no reason to believe that section 523(a)(4) will be construed otherwise. Thus, unless there be some additional fact, section 523(a)(4), insofar as it relates to a debtor acting in a fiduciary capacity, does not apply to frauds of agents, bailees, brokers, factors, partners, and other persons similarly situated. Also, the common-place frauds of the ordinary debtor in disposing of his property so as to hinder, delay, or defraud his creditors are not within clause (4). Nor does the phrase "in a fiduciary capacity" include or apply to trusts which are merely implied by law from contracts.

3 *Collier on Bankruptcy* § 523.14 (15th ed. 1990). (Emphasis supplied, footnotes omitted.)

3. An express or technical trust is a formal fiduciary relationship whose creation is based upon the intentions of a settlor and/or a beneficiary. A formal trust document is executed which establishes the rights and duties of the parties to the trust. The Maryland Court of Appeals enunciated the requirements for the creation of an express trust in the case of *Waesche v. Rizzuto*, 224 Md. 573, 168 A.2d 871 (1961), in which it construed a will and determined that the testator intended to create a testamentary trust. Those requirements are (1) a subject matter for a proper trust; (2) *a person competent to create a trust;* (3) one capable of holding the property as trustee; and (4) a person for whose benefit the trust property is held. 224 Md. at 583, 168 A.2d at 875.

4. This Court disagrees with the *Marino* decision inasmuch as it held that the statute created an express trust. The Maryland Construction Trust Statute imposes a trust upon the performance of an act (the payment of funds) irrespective of the intentions of the parties and therefore it is a trust implied in law. According to this analysis, the debt is dischargeable because the act or omission of the debtor was not a breach of fiduciary duties contemplated by Congress in its enactment of

Section 523(a)(4). The intention of the Maryland Legislature regarding dischargeability *vel non* is irrelevant. The supremacy of Federal law over state law requires that the discharge in bankruptcy prevail over a state statute for the protection of subcontractors. (*Compare* Albright, *The Maryland Construction Trust Statute: New Personal Liability—Its Scope and Federal Bankruptcy Implications,* 17 Baltimore Law Review 482 (1988), which espouses a contrary view to that held by this opinion.)

5. A statutory trust is a legislative creation and is therefore not an express trust in the absence of an intention by the parties to create a fiduciary agreement between themselves. A statutory trust cannot be a technical trust in the absence of the execution of a formal trust agreement between the parties. In this regard, there is no perceivable difference, for bankruptcy purposes, between a trust implied in law by a court and one enacted in law by a legislature.

6. Several courts have held that a statutory trust was an express trust because the legislature clearly expressed an intention to create a trust. *See for example In re Twitchell,* 91 B.R. 961 (D.Utah 1988); *Matter of Kawczynski,* 442 F.Supp. 413 (W.D.N.Y.1977); *In re Ketchum,* 409 F.Supp. 743 (S.D.N.Y.1975). These cases were not correctly decided in the opinion of this Court. The intention of the state legislature is irrelevant to the creation of an express trust. Because the creation of an express trust depends upon the intention of the parties, an express trust can never be created by statute alone.

7. An eminent authority on the subject, Professor George Gleason Bogert, presented the following classification in his famous treatise:

Trusts are classified with respect to the manner of their origin. Where based upon the expressed intent of the settlor they are called *express trusts;* when they come into existence because of presumed or inferred intent they are given the name of *resulting trusts;* and when they are created by court action in order to work out justice, without regard to the

intent of the parties, they are denominated *constructive trusts.* The two latter classes of trusts, according to the orthodox view, were grouped together under the heading of implied trusts and this terminology is still used. But the logic of this classification has been subject to criticism. There has been disagreement as to the meaning of "implied" in this connection. The Restatement of Trusts abandoned the phrase "implied trust" and this seems desirable.

1 Bogert *The Law of Trusts and Trustees,* § 1 (2d ed. 1977) (Footnotes omitted.)

8. As long ago as the year 1844, the Supreme Court held that in order to bar a discharge in bankruptcy for violation of fiduciary duties, the debtor must have been a trustee of a trust in fact. The issue in the case of *Chapman v. Forsyth,* 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844) was whether under the Bankruptcy Act of 1841 (5 Stat. 440) a commission merchant and factor holding money for others was a fiduciary for purposes of denying him a discharge. (The first section of the bankruptcy law provided that the discharge applied only to those debts "which shall not have been created in consequence of a defalcation as a public officer, or as executor, administrator, guardian or trustee, or while acting in any other fiduciary capacity . . .") The Court stated:

If the act embrace such debt (of a factor or commission merchant), it will be difficult to limit its application. It must include all debts arising from agencies; and, indeed, all cases where the law implies an obligation from the trust reposed in the debtor. Such a construction would have left but few debts on which the law could operate. In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the 1st section of the act.

The cases enumerated, "the defalcation of a public officer," "executor," "administrator," "guardian," or "trustee,"

are not cases of implied but special trusts, and the "other fiduciary capacity" mentioned, must mean the same class of trusts. The act speaks of technical trusts, and not those which the law implies from the contract. A factor is not, therefore, within the act.

43 U.S. (2 How.) at 208, 11 L.Ed. 236.

9. The holding in *Chapman* was carried forward in cases decided by the Supreme Court under the Bankruptcy Act of 1898. In *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934), the Court held that a sale out of trust by an automobile dealer of an automobile subject to a creditor's floorplan financing lien was not a breach of fiduciary duty. Citing *Chapman* with approval, the Court (Cardozo, J.) stated:

> ... It is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankruptcy has become chargeable as a trust *ex maleficio.* He must have been a trustee before the wrong and without reference thereto. In the words of Blatchford, J.: "The language would seem to apply only to a debt created by a person who was already a fiduciary when the debt was created." *Upshur v. Briscoe, supra*, at page 378 of 138 U.S. [365] 11 S.Ct. 313, 318 [34 L.Ed. 931 (1891)]. Was petitioner a trustee in that strict and narrow sense?
>
> We think plainly he was not, though multiplicity of documents may obscure his relation if the probe is superficial ... The trust receipt may state that the debtor holds the car as the property of the creditor; in trust, it is his own property, subject to a lien ... The substance of the transaction is this, and nothing more, that the mortgagor, a debtor, has bound himself by covenant not to sell the mortgaged chattel without the mortgagee's approval. The resulting obligation is not turned into one arising from a trust because the parties to one of the documents have chosen to speak of it as a trust ...

293 U.S. at 333–334, 55 S.Ct. at 153–154.

10. An expansion of the meaning of "fiduciary capacity" by some courts to include

trusts created by statute also appears to be impermissible as being against the legislative intent of Congress in limiting the exception to the discharge in bankruptcy to fraud or defalcation committed by a trustee in fact.

This is evident in the context of the *Kawczynski* case, *supra.* After holding that the New York Lien Law created an express trust on behalf of subcontractors and suppliers against general contractors, the court moved on to the unwarranted conclusion that a mere conversion amounted to defalcation under the Bankruptcy Act:

> The only remaining question is whether the bankrupt's use of the funds in question for purposes other than paying the appellants constituted a "defalcation" within the meaning of § 17(a)(4) of the Bankruptcy Act (the statutory predessor to § 523(a)(4) of the Bankruptcy Code). Although the funds were used for legitimate business purposes such as paying various overhead expenses, these payments nevertheless amounted to a diversion of trust funds under § 72 of the Lien Law. *Naiztat Iron Works, Inc. v. Tri-Neck Construction Corp.*, 62 Misc.2d 228, 308 N.Y.S.2d 427 (Sup.Ct. 1970). "Defalcation" has been interpreted by the Second Circuit to include innocent defaults. *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510 (2d Cir.1937). Accordingly, the court finds that the bankrupt's debts to appellants are nondischargeable under § 17(a)(4).

442 F.Supp. at 417–418. Because the court held that the law transformed a mere commercial transaction into a fiduciary relation, an "innocent default" rose to the level of a violation of a fiduciary duty.

11. In so holding the court missed the point of the nondischargeability provision at issue in that case and in this one. The rationale for limiting nondischargeability to fraud and defalcations committed by a trustee in fact is that such *misconduct by one who voluntarily undertook specific fiduciary obligations* is more reprehensible and more worthy of disapprobation than the misconduct of one whose fiduciary

duties are involuntarily imposed by operation of law. At the same time, it is obvious that a beneficiary of a trust in fact who reposes trust and confidence in a trustee and who is injured by his defalcation is more worthy of protection than an injured business associate who presumably dealt with the debtor at arm's length and on an equal basis.

12. In the instant case, the plaintiff and the debtor were joint venturers in addition to being respectively subcontractor and contractor. On these facts, there is even less reason to find that a fiduciary relationship existed between the parties for bankruptcy purposes. The statute does what the Supreme Court held in *Chapman v. Forsyth* could not be done for purposes of denying dischargeability, that is, it converts what essentially was a mercantile relationship into a fiduciary one.

13. The trust in the instant case was not created in fact by parties who manifested an intention to do so, but was created *by operation of law* by the legislature. Because the intention of the parties was irrelevant in the creation of this trust, it would seem to be what is known as an involuntary trust. According to one explanation,

In some states trusts are divided into voluntary and involuntary trusts and under this classification voluntary trusts are express trusts, and involuntary trusts are implied or constructive trusts. A voluntary trust is defined as an obligation arising out of a personal confidence reposed in, and voluntarily accepted by, one for the benefit of another. An involuntary trust is one which is created by operation of law.

89 C.J.S. *Trusts* § 18 (1990).

14. "In the case of an express trust, acceptance of a trust by a trustee is necessary to charge him with the office of trustee and the administration of the trust, and to vest legal title in him, but his acceptance of the trust is not necessary to its existence and validity, since if he declines the trust, a court will appoint a trustee to fill the office that he declines." 76 Am.Jur.2d *Trusts* § 123 (1990) (Footnotes omitted.)

15. The alleged breach of fiduciary duty in the instant case did not occur in the context of an express or technical trust. The Maryland Construction Trust Statute does not create an express or technical trust on the part of a contractor as trustee on behalf of a subcontractor.

16. There is no evidence of a fraudulent intent on the part of L. Carl Holmes against the plaintiff. On the contrary, the evidence indicates that the failure of Mr. Holmes to pay the plaintiff was an innocent conversion.

17. Finally, as Judge Derby decided in *Marino, supra,* the individual debtor cannot be held liable for the misconduct of the corporate contractor in the absence of fraud. As stated in the case of *In re Levitan,* 46 B.R. 380 (Bankr.E.D.N.Y.1985).

As a general rule, corporate shareholders, officers and directors are not personally liable on agreements which they sign on behalf of the corporation. "It is axiomatic in the law of agency that when there is a disclosed principal the agent will not be personally bound unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability." (Citations omitted.)

46 B.R. at 386. *See also Bart Arconti & Sons, Inc. v. Ames–Ennis, Inc.,* 275 Md. 295, 340 A.2d 225 (1975).

18. Because this Court holds that the Maryland Construction Trust Statute does not create an express trust sufficient to deny dischargeability of a debt incurred by the debtor's breach of fiduciary duty, and because the statute has been held insufficient to impose liability upon an individual debtor acting on behalf of a corporate contractor *in the absence of fraud,* the Court need not reach the issue of whether the statute may be applied retroactively to contracts executed prior to the effective date of the statute. The instant complaint will be dismissed with prejudice upon the granting of the debtor's motion pursuant to Bankruptcy Rule 7041 and Federal Rule of Civil Procedure 41(b).

ORDER ACCORDINGLY.