**In re Mandt S. HALVERSEN, Brenda Halversen, Debtors.**

**Metropolitan Steel, Inc., Plaintiff,**

v.

**Mandt S. Halversen and Brenda Halversen, Defendants.**

**Bankruptcy No. 8:04–BK–21050–PMG. Adversary No. 8:04–ap–816–PMG.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Sept. 14, 2005.

---

**14.** The total amount of claims filed in this Chapter 7 case is $310,346.03.

William Knight Zawadski, Esquire, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill and Mullis, P.A., Tampa, FL, for Plaintiff.

Edward M. Waller, Jr., Esquire, Fowler, White, Boggs, Banker, P.A., Tampa, FL, for Defendants.

## ORDER ON (1) MOTION TO DISMISS WITH PREJUDICE METROPOLITAN STEEL INC.'S COMPLAINT OBJECTING TO DISCHARGEABILITY OF DEBT, AND (2) METROPOLITAN STEEL, INC.'S MOTION FOR SUMMARY JUDGMENT

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for hearing to consider the (1) Motion to Dismiss with Prejudice Metropolitan Steel Inc.'s Complaint Objecting to Dischargeability of Debt, and (2) Metropolitan Steel, Inc.'s Motion for Summary Judgment.

The Plaintiff, Metropolitan Steel, Inc., commenced this adversary proceeding by filing a Complaint Objecting to Dischargeability of Debt. In the Complaint, the Plaintiff contends that a debt owed to it by the Debtors, Mandt S. Halversen and Brenda Halversen, is nondischargeable pursuant to § 523(a)(4) of the Bankruptcy Code, based on the Debtor's fraud or defalcation while acting in a fiduciary capacity.

The Debtors filed a Motion to Dismiss the Complaint. In the Motion, the Debtors primarily assert that the Plaintiff has not alleged the existence of an express trust that is required for a cause of action under § 523(a)(4). The Debtors also allege that the Plaintiff has not alleged any facts evidencing fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.

The Plaintiff filed a Motion for Summary Judgment with respect to its Complaint. Generally, the Plaintiff contends that the Debtors' violation of Maryland Code, Real Property, § 9–201, constitutes a "defalcation while acting in a fiduciary capacity" within the meaning of § 523(a)(4) of the Bankruptcy Code, and that the Debtors' prior consent to the entry of a state court judgment against them precludes their relitigation of the claims based on fraud and breach of a fiduciary relationship.

### Background

The Debtors were the principals of a corporation known as International Metal Export, Inc. (International Metal). In 1997, International Metal entered into a contract with the Plaintiff, as subcontractor, pursuant to which the Plaintiff agreed to provide steel for an air terminal project

in Maryland. The contract price was $74,840.00. The Debtors guaranteed International Metal's obligations under the contract.

The Plaintiff subsequently filed a state court action in Maryland against International Metal and the Debtors, individually. In the state court Complaint, the Plaintiff alleged that it had delivered the steel to the project in accordance with the contract, but had not been paid by International Metal or by the Debtors as guarantors.

The state court Complaint contained three Counts. Count I was an action for Breach of Contract in which the Plaintiff sought the sum of $79,832.00.

Count II was an action based upon "Trust Relationship in the Construction Industry, Real Property Article, § 9–201, et seq." In Count II, the Plaintiff alleged that (1) the Debtors, as officers of International Metal, "have direction over and control of money held in trust for the purpose of paying the money to subcontractors who are entitled to it," that (2) "International Metal has received the sum of $98,500.00 from the General Contractor, which sum is to be held in trust for International Metal's subcontractors," and that (3) the Debtors had "knowingly retained and used money owed to" the Plaintiff. The Plaintiff requested a judgment in the amount of $79,832.00, plus interest, costs, and attorney's fees.

Count III was an action based upon "Construction Contracts—Prompt Payment, Real Property Article, § 9–301, et seq." In Count III, the Plaintiff alleged that (1) Section 9–302(b)(3) of Maryland's Real Property statute required subcontractors to pay undisputed amounts owed to its subcontractors within seven days after receipt of payment by the first subcontractor, that (2) the Plaintiff had delivered all of the contract materials to the job site, that (3) International Metal had received the sum of $98,500.00 from the General Contractor, and that (4) the Plaintiff had incurred damages "as a direct result of International Metal's bad faith failure to pay" the undisputed amounts owed to the Plaintiff.

The Debtors and International Metal filed an Answer to the state court Complaint, generally denying liability and asserting certain defenses to the claims.

On January 15, 1998, the state court in Maryland entered an Order Granting Plaintiff's Motion for Partial Summary Judgment. In the Order, the Court provided that it was:

ORDERED, that Partial Summary Judgment be granted in favor of the Plaintiff and against the Defendants, International Metal Export, Inc., Mandt S. Halversen and Brenda Halversen, jointly and severally, in the amount of $61,205.82, said amount being the uncontested portion of Plaintiff's breach of contract claim, Count I; and, it is, further,

ORDERED, that the balance of the amount claimed by the Plaintiff under Count I of its Complaint and the claims set forth in Counts II and III of the Complaint, are reserved for the trial of this matter.

The Order was entered after consideration of the Plaintiff's Motion for Partial Summary Judgment and the Debtors' Opposition to the Motion.

Approximately three weeks later, on February 6, 1998, the state court in Maryland entered a Consent Order. The Consent Order provides in its entirety:

Upon consideration of the Complaint filed herein, and the consents of the parties as indicated by their signatures and that of their counsel hereunder, it is this 6th day of February, 1998, by the

Circuit Court for Washington County, Maryland,

**ORDERED**, that a Judgment be, and it is hereby, entered in favor of the Plaintiff, Metropolitan Steel, Inc., against the Defendants, International Metal Export, Inc., Mandt S. Halversen and Brenda Halversen, jointly and severally, in the amount of Seventy–Nine Thousand Eight Hundred Thirty–Two Dollars, (79,832.00) principal, plus Twenty Thousand Dollars ($20,000.00) attorney's fees, plus costs.

The Consent Order was signed by the Debtors and their attorney.

The Debtors filed a petition under Chapter 7 of the Bankruptcy Code on October 28, 2004.

On December 27, 2004, the Plaintiff filed a Complaint Objecting to Dischargeability of Debt in the Debtors' bankruptcy case. The Complaint is based solely on § 523(a)(4) of the Bankruptcy Code. In the Complaint, the Plaintiff alleges that the Debtors breached their fiduciary duty by failing to pay the Plaintiff the amount owed to it under the subcontract, even after the Debtors had received money from the General Contractor. The Plaintiff further alleges that the Debtors' conduct was fraudulent, intentional, and designed to advance the Debtors' own personal interests in deliberate contravention of their duty to the Plaintiff. The Plaintiff seeks a judgment in the amount of $131,375.50 as of March 9, 2005. (Doc. 13, Affidavit of James R. Hill, Jr.).

### Discussion

■ Section 523(a)(4) of the Bankruptcy Code provides:

**11 U.S.C. § 523. Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

11 U.S.C. § 523(a)(4). "Section 523(a)(4), as with all other discharge statutes, is construed narrowly to further the fundamental policy of the Bankruptcy Code of providing the debtor with a fresh start." *In re Delisle*, 281 B.R. 457, 466 (Bankr. D.Mass.2002).

### I. Debtors' Motion to Dismiss Complaint

The Debtors assert that the Complaint should be dismissed, in part because the Plaintiff has not alleged the existence of an express trust as required by § 523(a)(4) of the Bankruptcy Code.

#### A. Express or technical trusts

Debts based upon "fraud or defalcation while acting in a fiduciary capacity" are not dischargeable pursuant to § 523(a)(4).

■ "For purposes of section 523(a)(4), the term 'fiduciary' is not to be construed expansively; rather, it refers only to 'express' or 'technical' trusts that exist before the act of defalcation." *In re Hanft*, 315 B.R. 617, 623 (S.D.Fla.2002). "The Supreme Court has consistently held that the term 'fiduciary' is not to be construed expansively, but instead is intended to refer to 'technical' trusts." *Quaif v. Johnson*, 4 F.3d 950, 953 (11th Cir.1993). "It is well established that the defalcation provision of § 523(a)(4) applies to express or technical trusts, but not to constructive trusts that courts may impose as an equitable remedy." *In re Blaszak*, 397 F.3d 386, 391 (6th Cir.2005)(citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 79 L.Ed. 393 (1934)).

Despite the narrow construction of the term "fiduciary" in § 523(a)(4), however, the Eleventh Circuit Court of Appeals has found that certain statutory trusts can meet the § 523(a)(4) standard, provided the statute creates sufficient fiduciary duties prior to the alleged act of "defalcation." In *Quaif v. Johnson*, 4 F.3d at 954, for example, the Court considered whether a particular provision of the Georgia insurance code created fiduciary duties that were sufficient to create a technical trust within the meaning of § 523(a)(4). The Court concluded that the debtor, an insurance agent, was in fact a "fiduciary" under the statute:

> The Georgia statute requires that the premiums must be separate from other types of funds, but may be kept in a common premium account as long as there were adequate records of the sources of these funds. The court finds that this is sufficient "segregation" to satisfy the requirement that the fiduciary duties be created prior to the act of defalcation.

*Id.* at 954. In other words, since the debtor was under a statutory duty to segregate premium funds from operating funds, and to maintain records and account for the funds, the Court found that he was acting in a "fiduciary capacity" as required by § 523(a)(4). *Id.* at 955.

Although subsequent decisions have acknowledged the principle set forth in *Quaif*, the Courts in those cases have declined to extend the holding beyond its limited application. See, for example, *In re Hanft*, 315 B.R. 617, 623 (S.D.Fla. 2002)("While the Eleventh Circuit made clear in *Quaif* that a fiduciary duty for purposes of section 523(a)(4) may be created by statute, the Court finds that Florida's Financial Responsibility Act creates neither a fiduciary duty nor a technical trust.") and *In re Jones*, 306 B.R. 352, 354–

55 (Bankr.N.D.Ala.2004)("The Eleventh Circuit found that the debtor's duty to segregate premiums in an account separate from other types of funds was sufficient to establish that a statutorily-created or technical trust relationship existed between the debtor and the insurer prior to the debtor's act of defalcation. There is not a similar Alabama statute creating a duty on corporate officers and directors to segregate or account for trust funds."). See also *In re Frick*, 207 B.R. 731 (Bankr. N.D.Fla.1997).

It appears, therefore, that statutory trusts are not necessarily and automatically excluded from the application of § 523(a)(4). Instead, the statute at issue must be evaluated to determine whether it creates an express or technical trust of the type required by the dischargeability provision.

### B. The Maryland Construction Trust Statute

■ The first issue in this case, therefore, is whether the Maryland Construction Trust Statute creates a "technical trust" within the meaning of § 523(a)(4) of the Bankruptcy Code.

■ Section 9–201 of the Maryland Code, Real Property, provides in part:

**TITLE 9. STATUTORY LIENS ON REAL PROPERTY**

**SUBTITLE 2—TRUST RELATIONSHIPS IN THE CONSTRUCTION INDUSTRY**

**§ 9–201. Fund held in trust; commingling**

. . . . .

(b)(1) Any moneys paid under a contract by an owner to a contractor, or by the owner or contractor to a subcontractor for work done or materials fur-

nished, or both, for or about a building by any subcontractor, shall be held in trust by the contractor or subcontractor, as trustee, for those subcontractors who did work or furnished materials, or both, for or about the building, for purposes of paying those subcontractors.

(2) An officer, director, or managing agent of a contractor or subcontractor who has direction over or control of money held in trust by a contractor or subcontractor under paragraph (1) of this subsection is a trustee for the purpose of paying the money to the subcontractors who are entitled to it.

(c)(1) *Nothing contained in this subtitle shall be construed as requiring moneys held in trust by a contractor or subcontractor under subsection (b) of this section to be placed in a separate account.*

(2) If a contractor or subcontractor commingles moneys held in trust under this section with other moneys, *the mere commingling of the moneys does not constitute a violation of this subtitle.*

MD Code, Real Property, § 9–201 (Emphasis supplied). Section 9–202 of the Statute provides:

§ 9–202. Fraudulent retention of funds; liability

Any officer, director, or managing agent of any contractor or subcontractor, who knowingly retains or uses the moneys held in trust under § 9–201 of this subtitle, or any part thereof, for any purpose other than to pay those subcontractors for whom the moneys are held in trust, shall be personally liable to any person damaged by the action.

MD Code, Real Property, § 9–202. The purpose of the statute is "to protect subcontractors from dishonest practices by general contractors and other subcontractors for whom they might work." *Fergu-son Trenching Co., Inc. v. Kiehne,* 329 Md. 169, 174–75, 618 A.2d 735, 737–38 (1993).

The Plaintiff contends that it is clear under "the applicable version of the Maryland Statute that failure to pay a subcontractor is equivalent to a breach of trust while acting in a fiduciary capacity, embezzlement or larceny, as prohibited from discharge by § 523(a)(4) of the Bankruptcy Code." (Doc. 15).

In response, the Debtors contend that the Plaintiff has failed to state a cause of action for nondischargeability of the debt at issue, because "the Maryland Construction Trust Statute creates a trust imposed in law and is not sufficient to support a finding of fraud under 28 [sic] U.S.C. § 523(a)(4)." (Doc. 6, p. 2).

The Court finds that the Maryland statute does not create an express or technical trust as required by § 523(a)(4) of the Bankruptcy Code, and that a violation of the statute, without more, does not constitute grounds for determining that a particular debt is nondischargeable.

In reaching this decision, the Court relies on a series of decisions by the Bankruptcy Court in Maryland which hold that the fund required by a prior version of the statute did not qualify as an express trust or technical trust for purposes of § 523(a)(4).

In *In re Holmes,* 117 B.R. 848 (Bankr. D.Md.1990), for example, the plaintiff (a subcontractor) filed a dischargeability complaint against the debtor (the president of the general contractor) and alleged that the debtor's conversion of funds was a violation of the Maryland Construction Trust Statute and therefore a breach of fiduciary duty within the meaning of § 523(a)(4). *In re Holmes,* 117 B.R. at 851. The debtor filed a motion to dismiss the complaint.

The Court in *Holmes* began its evaluation of the debtor's motion by restating the general rule that "[i]n order for a debt to be nondischargeable under Section 523(a)(4) arising from a breach of fiduciary duty, the debtor must have been acting as a trustee of an express or technical trust." *Id.* at 852. The Court then reasoned:

An express or technical trust is a formal fiduciary relationship whose creation is based upon the intentions of a settlor and/or a beneficiary....

The Maryland Construction Trust Statute imposes a trust upon the performance of an act (the payment of funds) irrespective of the intentions of the parties and therefore it is a trust implied in law.

. . . . .

The trust in the instant case was not created in fact by parties who manifested an intention to do so, but was created *by operation of law* by the legislature.

. . . . .

The alleged breach of fiduciary duty in the instant case did not occur in the context of an express or technical trust. The Maryland Construction Trust Statute does not create an express or technical trust on the part of a contractor as trustee on behalf of a subcontractor.

*Id.* at 852–55(Emphasis in original). The Court therefore granted the debtor's motion to dismiss the complaint because the "Maryland Construction Trust Statute does not create an express trust sufficient to deny dischargeability of a debt incurred by the debtor's breach of fiduciary duty." *Id.* at 855.

The Court subsequently confirmed its decision in *Holmes* by stating that "a violation of the Maryland Construction Trust Statute cannot be the sole basis for finding a debt to be nondischargeable for breach of fiduciary duty." *In re Pontier,* 165 B.R. 797, 801 (Bankr.D.Md.1994).

Similarly, in *In re Piercy,* 140 B.R. 108 (Bankr.D.Md.1992), the plaintiff held an uncontested pre-bankruptcy judgment against the debtor for the fraudulent misappropriation of funds under the Maryland Construction Trust Act. *In re Piercy,* 140 B.R. at 109. After the debtor filed his bankruptcy case, the plaintiff filed a dischargeability action against him under § 523(a)(4), and both parties moved for summary judgment. *Id.* at 109.

The Court noted that § 523(a)(4) "requires that the fiduciary relationship between the creditor and the debtor be one based in fact prior to the act of the debtor which is questioned. The statute also requires that there be a technical trust or an express trust which indicates the intent of both parties to establish a fiduciary relationship." *Id.* at 114. The Court then concluded that the debt claimed by the plaintiff was dischargeable because the statute did not impose a fiduciary duty on the debtor, and the plaintiff had not otherwise shown any fraudulent intent on the part of the debtor. *Id.*

The standards for fraud and fiduciary capacity under the Maryland Construction Trust Statute fall short of the required elements of actual fraud and of a technical or express trust under 11 U.S.C. § 523(a)(4). [The plaintiff's] uncontested judgment under the Maryland Construction Trust Statute, by itself, does not support a finding of fraud within a fiduciary capacity pursuant to 11 U.S.C. § 523(a)(4).

*Id.* at 115. The Court granted the debtor's motion for summary judgment and determined that the debt was dischargeable. *Id.*

For other cases in this line of decisions, see *In re Marino,* 115 B.R. 863, 872 (Bankr.D.Md.1990)("[A]n objection to dis-

charge of an individual officer of a corporate contractor on the ground of defalcation while acting in a fiduciary capacity is not viable based solely on the Trust Relationships subtitle."), and *In re Marino,* 139 B.R. 380, 385 (Bankr.D.Md.1992)(The "presumption" of fraud contained in a related, now repealed section of the Statute could not be deemed a fraud or defalcation while acting in a fiduciary capacity under § 523(a)(4)).

The Maryland Construction Trust Statute was amended in 1995, after the above decisions were entered. It appears that the revision primarily consists of the addition of subsection (b)(2) to § 9–201, which provides that an officer of a contractor who has control of the money held in the fund is a "trustee" for purposes of paying the money to the subcontractors. Additionally, § 9–202 was amended to provide that an officer who "knowingly" retains money held in the fund is personally liable for damages. The former version of the statute had provided for such personal liability only if the officer retained the money "with intent to defraud."

The Court finds that the amendments that took effect in 1995 have no material impact on the Maryland Court's previous analysis of the Statute under § 523(a)(4). In fact, in *In re McGee,* 258 B.R. 139 (Bankr.D.Md.2001), which was entered six years after the amendments were enacted, the Court cited the *Holmes* decision, and indicated that the same conclusion would be reached under the current form of the statute. The Court stated, for example, that "an express trust must exist for purposes of finding a debt incurred by a debtor while acting in fiduciary capacity to be nondischargeable under 11 U.S.C. § 523(a)(4)." *In re McGee,* 258 B.R. at 146. The Court then specifically noted that "the trust in question [the Maryland Construction Trust] was imposed by stat-

ute and is therefore a trust implied in law as opposed to an express trust created by the intention of the parties themselves." *Id.* at 145.

Based on the authorities discussed above, the Court finds that the Maryland Construction Trust Statute does not create a technical trust within the meaning of § 523(a)(4) of the Bankruptcy Code. The decisions reached by the Maryland Courts, which dealt directly with the Statute, have not been overturned or legislatively superseded. Further, the current version of the statute, which applies to the parties' transactions in this case, specifically provides that contractors are not required to segregate the construction funds, and that the "mere commingling" of the funds is not a violation of the statute.

Under these circumstances, the Court finds that a violation of the Statute, without more, does not constitute grounds for determining that the debt owed by the Debtors to the Plaintiff is nondischargeable as a "fraud or defalcation while acting in a fiduciary capacity."

### C. Allegations of fraud

In addition to asserting that the Maryland Statute is not sufficient to support a claim under § 523(a)(4), the Debtors also contend that the Complaint should be dismissed because "the Plaintiff has not and cannot allege circumstances amounting to fraud with particularity as required by Bankruptcy Rule 7009 and Fed.R.Civ.P. 9(b)." (Doc. 6, p. 7).

In the Complaint that commenced this adversary proceeding, the Plaintiff alleged that the Debtors "knowingly retained and used money owed to" the Plaintiff (Paragraph 23), that the Plaintiff has incurred damages as a "direct result of [International Metal's] bad faith failure to pay" the Plaintiff (Paragraph 26), that the Debtors "breached their fiduciary duty" by failing

to pay the Plaintiff the money that International Metal received from the general contractor (Paragraphs 27, 28), that the Debtors "acted fraudulently, and with intentional and deliberate disregard of" the Plaintiff's rights (Paragraph 30), and that the Debtors committed the fraudulent acts for the purpose of furthering their own personal interests (Paragraph 31).

In the Complaint filed in the state court action in Maryland, the Plaintiff alleged that the Debtors had "knowingly retained and used money owed to" the Plaintiff (Paragraph 20), that the Plaintiff had been damaged as a direct result of the Debtors' breach of trust (Paragraph 21), and that the Debtor, Mandt S. Halversen, told an officer of the Plaintiff in June of 1997 that the Plaintiff "would not see a dime." (Paragraph 13).

Rule 9(b) of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Rule 7009 of the Federal Rules of Bankruptcy Procedure, provides:

**Rule 9. Pleading Special Matters**

. . . . .

 **(b) Fraud, Mistake, Condition of the Mind.** In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed.R.Civ.P. 9(b). "The particularity rule serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Ziemba v. Cascade International, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001). "The serious nature of fraud requires a 'plaintiff to plead more than conclusory allegations of fraudulent conduct.'"

*In re Rosen,* 151 B.R. 648, 655 (Bankr. E.D.N.Y.1993).

 In this case, the Court finds that the Plaintiff has not sufficiently set forth the facts that support the Debtors' allegedly fraudulent conduct. The dischargeability Complaint, for example, focused primarily on the Debtors' alleged receipt of funds from the general contractor, and their subsequent failure to pay those funds to the Plaintiff. Although the Complaint contains conclusory allegations that the Debtors acted "fraudulently" and in "bad faith" by failing to remit the funds, the allegations are not supported by specific facts or representations showing that the failure was actually fraudulent.

The state court Complaint contains similar allegations that the Debtors "knowingly" retained the funds, but also lacks specific details showing that the failure to pay was the product of fraud or a misrepresentation of material fact. Although the Plaintiff alleges that the Debtor stated that the Plaintiff would "not see a dime," the Court finds that this allegation, standing alone, is insufficient to show the "circumstances constituting fraud" with the particularity required by Rule 9(b).

**D. Conclusion**

The Court has found that the Maryland Construction Trust Statute does not create a technical trust within the meaning of § 523(a)(4) of the Bankruptcy Code, and that a violation of the statute, without more, does not constitute grounds for determining that the debt owed by the Debtors to the Plaintiff is nondischargeable in the Debtors' bankruptcy case. The Court has also found that the Plaintiff has not alleged facts, independent of the violation of the Maryland statute, to sufficiently state a cause of action for fraud against the Debtors.

Consequently, this adversary proceeding should be dismissed, without prejudice to permit the Plaintiff to amend its Complaint to allege particular circumstances constituting fraud and establishing a fiduciary capacity, if such facts exist.

## II. Plaintiff's Motion for Summary Judgment

The Plaintiff contends that the Debtors are precluded from relitigating the issues of fraud and breach of fiduciary duty by virtue of their consent to the entry of a prebankruptcy judgment against them in the state court action in Maryland.

Generally, collateral estoppel "precludes relitigation of an issue decided previously in judicial or administrative proceedings provided the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in an earlier proceeding." *In re Swilley*, 295 B.R. 839, 846 (Bankr.D.S.C. 2003). Courts in Maryland have stated that "[c]ollateral estoppel, or issue preclusion, bars the relitigation of specific issues of fact actually litigated in a prior action, where the party against whom the doctrine is being applied was privy to the first suit." *United Book Press, Inc. v. Maryland Composition Company, Inc.*, 141 Md.App. 460, 476, 786 A.2d 1, 10 (2001)(citing *Colandrea v. Wilde Lake Community Ass'n*, 361 Md. 371, 387, 761 A.2d 899 (2000)).

For purposes of the Plaintiff's Motion for Summary Judgment, therefore, the issue is whether the doctrine of collateral estoppel applies to the Consent Order entered by the state court in Maryland, so that the Plaintiff is entitled to a determination that the debt owed to it by the Debtors is nondischargeable under § 523(a)(4) of the Bankruptcy Code.

The Consent Order was entered by the state court in Maryland. "The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings 'shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken.' 28 U.S.C. § 1738." *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 1331–2, 84 L.Ed.2d 274 (1985).

In the courts in Maryland, "[c]ollateral estoppel bars a party from relitigating any issue of fact or law conclusively determined against that party in previous litigation." *Brown & Sturm v. Frederick Road Limited Partnership*, 137 Md.App. 150, 192, 768 A.2d 62, 85 (2000). In Maryland courts, the party claiming estoppel must establish four elements:

1. Was there a final judgment on the merits in the prior litigation?

2. Was the party against whom the plea is asserted a party or in privity with the party to the prior adjudication?

3. Was the issue decided in the prior litigation identical with the issue presented in the subsequent litigation?

4. Was the issue actually litigated essential to the judgment in the prior action?

*Id.* (citations omitted). Maryland courts emphasize that the factual determination of the issue upon which collateral estoppel is sought must have been "essential to the judgment" in the prior action, and must have been a "critical and necessary" part of the decision in the prior proceeding. *Id.*, 137 Md.App. at 193, 768 A.2d at 85–6 (citations omitted).

In the prebankruptcy litigation between the parties to this adversary proceeding, the Maryland Court entered partial summary judgment on the breach of contract

count, Count I of the Complaint. Subsequently, the Consent Order was entered and concluded the litigation. The Consent Order does not contain any acknowledgments or findings of facts. There is no indication of an acknowledgment or determination of any essential factual issue, other than amounts owed.

■ Maryland courts have considered the application of collateral estoppel in circumstances involving confessed judgments (see *United Book Press, Inc. v. Maryland Composition Company, Inc.*, 141 Md.App. 460, 786 A.2d 1 (2001)) and consent judgments (see *Welsh v. Gerber Products, Inc.*, 315 Md. 510, 555 A.2d 486 (1989)). "A consent judgment does not necessarily include an actual adjudication of the issue ..., and in appropriate circumstances a subsequent inquiry should be made to determine what the parties intended and whether the consent judgment represents an actual adjudication of a particular issue." *Welsh v. Gerber Products, Inc.*, 315 Md. 510, 515–6, 555 A.2d 486, 488–89 (1989). "A growing number of courts generally have agreed that consent judgments should not be given collateral estoppel effect except where the parties intended that result or the issue was actually litigated. [Citations omitted.]" *Id.*, 315 Md. 510, 520, 555 A.2d 486, 491.

According to the Eleventh Circuit Court of Appeals, three elements must be present in order for collateral estoppel to apply to the prior decision: "(1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action." *In re Halpern*, 810 F.2d 1061, 1064 (11th Cir.1987)(quoting *In re Held*, 734 F.2d 628, 629 (11th Cir.1984)).

■ In *Halpern*, the Eleventh Circuit specifically addressed the application of collateral estoppel to consent judgments, and concluded that "the central inquiry in determining the preclusive effect of a consent judgment is the intention of the parties as manifested in the judgment or other evidence." *In re Halpern*, 810 F.2d at 1064. If the parties intended for the consent judgment to operate as a final adjudication of the factual issues contained in the judgment, and if the judgment includes sufficiently detailed findings of fact regarding the issues, the issues were "actually litigated" for purposes of applying the doctrine of collateral estoppel. *Id.*

Based on the principles in *Halpern*, this Court subsequently declined to give collateral estoppel effect to a stipulated decision of the Tax Court in *In re Dorminy*, 301 B.R. 599 (Bankr.M.D.Fla.2003). In *Dorminy*, the Court first noted the general rule that "a settlement is not typically afforded collateral estoppel effect unless it is clear that the parties intended the settlement to have such a preclusive effect." *In re Dorminy*, 301 B.R. at 604. Secondly, the Court acknowledged that the parties' intent may be established by determining whether the stipulated decision "includes sufficient facts to support a finding that a debt is excepted from discharge." *In re Dorminy*, 301 B.R. at 604 (quoting *In re Swilley*, 295 B.R. at 847).

In *Dorminy*, the stipulated Tax Court decision provided that deficiencies in income tax were due in specific amounts for specific years, and that additions to tax were due based on various sections of the Internal Revenue Code. *In re Dorminy*, 301 B.R. at 601. The Court found that the Debtor was not precluded from asserting that his tax liabilities were dischargeable, because the decision did not "contain any factual findings pertaining to fraud," and

also because the decision did not "contain any admissions of the elements required for a finding of fraud, so that the Court cannot find that the parties intended the Decision to be afforded collateral estoppel effect in a subsequent action." *Id.* at 607.

In this case, the Consent Order provided that a judgment was entered in favor of the Plaintiff and against the Debtors, jointly and severally, in the amount of $79,832.00, plus attorney's fees in the amount of $20,000.00. The Order was entered "upon consideration of the Complaint" and the consents of all of the parties. The Complaint included an action for breach of contract, an action based on § 9–201 of Maryland's Real Property Code, and an action based on § 9–301 of Maryland's Real Property Code. The amount requested in the Complaint was $79,832.00, plus interest, costs, and fees. Consequently, the amount awarded to the Plaintiff in the Order represented the full amount sought in the Complaint.

■ The Court finds that the entry of the Consent Order does not preclude the Debtors from contesting the Plaintiff's claim that the debt at issue is nondischargeable. First, there is no evidence that the parties intended the Consent Order to have preclusive effect in a subsequent dischargeability action. The Order is unlike the stipulated order in *Swilley,* for example, in which the parties expressly agreed that the claims were of such a character that they could not be discharged in bankruptcy. *In re Swilley,* 295 B.R. at 848–49. No such stipulation appears in the record in this case.

Second, the Consent Order does not include any factual findings regarding fraud, and the record does not demonstrate that the Debtors admitted the elements required to establish fraud. The Order only provides for a judgment in a specific amount, and no supporting agreements or stipulations were produced that explain the basis for the settlement.

In *In re Booth,* 174 B.R. 619 (Bankr. N.D.Ala.1994), a prebankruptcy consent judgment was entered in the state court, which provided for liability in a stipulated amount, to be paid according to an agreed payment schedule. According to the Court, such consent judgments generally should not be given collateral estoppel effect, unless the parties intend for the consent judgment to operate as a final adjudication, and "make that binding by *stipulation* of the ultimate facts." *In re Booth,* 174 B.R. at 623(Emphasis in original). In *Booth,* the Court found that the consent judgment contained "no detailing of the ultimate facts constituting fraud and no manifestation of intent that the judgment is a final adjudication of the issue." *Id.* at 623. Collateral estoppel did not apply to the prior judgment.

The Consent Order in this case is similar to the judgment in *Booth* and the Tax Court decision in *Dorminy.* There are no factual findings pertaining to fraud, and the elements required for a finding of fraud have not been otherwise established. The Court cannot find that the parties intended for the Consent Order to be afforded collateral estoppel effect in a subsequent dischargeability action.

The Plaintiff's Motion for Summary Judgment should be denied.

### Conclusion

This is a dischargeability action under § 523(a)(4) of the Bankruptcy Code, and the matters under consideration are a Motion to Dismiss by the Debtors, and a Motion for Summary Judgment by the Plaintiff.

First, the Court finds that the Maryland Construction Trust Statute does not create a technical trust within the meaning of § 523(a)(4), so that a violation of the stat-

ute, without more, does not constitute grounds for determining that the debt owed by the Debtors to the Plaintiff is nondischargeable as a "fraud or defalcation while acting in a fiduciary capacity." Further, the Court finds that the Plaintiff has not alleged facts, independent of the violation of the Maryland statute, to sufficiently state a cause of action for fraud against the Debtors.

Consequently, the Debtors' Motion to Dismiss the Plaintiff's Complaint should be granted. The Complaint should be dismissed without prejudice, however, to permit the Plaintiff to amend the Complaint to allege particular facts constituting fraud and establishing a fiduciary capacity, if such facts exist.

Additionally, the Court finds that the Consent Order entered by the state court in Maryland should not be afforded collateral estoppel effect in this dischargeability action, because the Order does not contain any factual findings pertaining to fraud, and does not otherwise establish all of the elements required for a finding of fraud. The Court concludes, therefore, that the Motion for Summary Judgment filed by the Plaintiff should be denied.

Accordingly:

**IT IS ORDERED** that:

1. The Motion to Dismiss with Prejudice Metropolitan Steel Inc.'s Complaint Objecting to Dischargeability of Debt, filed by the Debtors, Mandt S. Halversen and Brenda Halversen, is granted as set forth in this Order.

2. Metropolitan Steel, Inc.'s Complaint Objecting to Dischargeability of Debt is dismissed, without prejudice, and Metropolitan Steel, Inc. shall have twenty (20) days from the date of this Order within which to file an Amended Complaint.

3. Metropolitan Steel, Inc.'s Motion for Summary Judgment is denied.